In the Matter of the Claim for Benefits under Article 18 of the Labor Law, Made by LONI MENDELSOHN, Claimant.

DOCTORS HOSPITAL, INC., Employer, Appellant; FRIEDA S. MILLER, as Industrial Commissioner, Respondent.

Third Department, November 12, 1941.

*Debevoise, Stevenson, Plimpton & Page* [*E. W. Debevoise, P. C. Brownell* and *A. F. Dana* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General; Henry Epstein, Solicitor General* [*W. Gerard Ryan* and *Julia M. Cook, Assistant Attorneys-General,* of counsel], for the respondent.

CRAPSER, J. This is an appeal by the Doctors Hospital, Inc., employer-appellant, from the decision of the Unemployment Insurance Appeal Board, affirming a decision of an Unemployment Insurance Referee, holding that the claimant herein was eligible for unemployment insurance benefits, for the reason that the employer employed four people for the statutory period and is not organized and operated exclusively for charitable purposes.

The facts are not in dispute and are not involved in this appeal. The hospital was incorporated in 1927 as a membership corporation with the approval of the State Board of Charities and a justice of the Supreme Court.

The purpose of the corporation was: " To establish, buy, construct, lease or otherwise acquire, and to erect, maintain, equip and operate a hospital."

In the Membership Corporations Law, in force at the time, the following definition is found: " The term ' membership corporation ' means a corporation not organized for pecuniary profit, incorporated under this chapter    *    *    *." (§ 2.)

In 1934 an amendment to the hospital's charter was adopted which provided that in the event of a voluntary dissolution of the corporation without judicial proceedings any remaining property should, unless otherwise directed by the Supreme Court, be given to some other hospital. Under the provisions of the Membership Corporations Law (§ 55) voluntary dissolution could only be accomplished with the approval of a justice of the Supreme Court and of the State Board of Charities.

The hospital is engaged exclusively in operating a hospital in the city of New York. The hospital's membership is limited to eleven. The members have the power to elect the directors and to fill vacancies in the membership. They receive no compensation or income or profits whatsoever nor do they have any privileges of any kind.

The hospital has a board of eleven directors, none of whom receive any salaries, compensation, profits or privileges of any kind. No officer receives any compensation, profits or privileges of any kind except that two officers who are full time employees engaged in the active management of the hospital are paid salaries.

The hospital has a medical board of about two hundred practicing doctors, most of whom have connections with other hospitals. This medical board has its own organization and each unit has charge of the supervision of hospital technique and equipment in their own specialty and there is also an administrative committee for the medical activities of the hospital. The members of the medical board receive no income, compensation or special privileges of any kind from the hospital and the time given to the administrative work is entirely uncompensated.

In addition to the medical board, there is a courtesy list of doctors varying between 1,600 and 2,200, none of whom receive any income, profit or compensation and all of whom are entitled to have patients admitted to the hospital on exactly the same basis as the members of the medical board.

There is a paid operating staff of employees of the hospital, essential to the proper conduct of the same, including ten resident salaried doctors, who devote their entire time to the hospital and have no practice of their own.

The hospital makes its services and facilities to some extent available to persons unable to pay. Free bed patients have averaged about eight per cent of the total number of bed patients during 1936–1938.

The hospital is a member of the Associated Hospital Service of New York, which operates the so-called three cent a day hospitalization plan and many patients are admitted under that plan.

The total bed capacity is 275 but the average per day in 1936 was about 115, in 1937 about 125 and in 1938 about 111.

The officer in charge of admitting free patients had authority to admit up to twenty-five patients all the time if there was that demand. Free care patients received care identical with that of paid patients including accommodations in the same type of rooms available to pay patients and they received all services including X-ray and physiotherapy free. The doctors requesting the admission of free patients are required to certify to the hospital that they are receiving no pay whatsoever for treating the patients.

The hospital performs free of charge all the laboratory work for the Association for Improving the Condition of the Poor and treats without charge emergency cases in the neighborhood. The hospital receives nothing in the way of reimbursement or contribution for its free care work.

The questions raised in this appeal are as follows:

1. The jurisdiction of the referee and of the Appeal Board to make a determination of the status of Doctors Hospital as an employer within subdivision 3 of section 502 of the Unemployment Insurance Law in this proceeding.

2. The status of Doctors Hospital as an exempt employer under paragraph (d) of subdivision 3 of section 502 of the Unemployment Insurance Law.

Section 530 of the Labor Law provides as follows: "An employee who is dissatisfied with an initial determination of his claim for benefits, or any other party affected by such determination, may within twenty days after the mailing or personal delivery of notice of such determination, request a hearing. Thereupon a hearing shall be held by a referee who shall render his decision within five days after the hearing is concluded. Written notice of the referee's decision, containing the reasons therefor, shall be promptly given to the employee, to the Commissioner, and to any other party affected thereby who appeared at the hearing."

Section 532 provides as follows: " The Appeal Board may decide any case appealed to it under any provision of this article on the basis of the record and of evidence previously submitted in such case, or it may, in its discretion hear argument or hold a further hearing, or remand such case to a referee for such purposes as it may direct."

This proceeding was initiated by the claimant under section 530 of the Unemployment Insurance Law claiming benefits by reason of her previous employment by the hospital. No attempt was made to make the hospital a party; it was not served with notice of the hearing or advised that it could be considered a party to the proceeding or that its exempt status might be in issue. It was not represented by counsel at either hearing before the referee. Two of its employees, not officers of the hospital who were present, appeared as witnesses pursuant to subpœna.

It was the duty, under the Unemployment Insurance Law, for the referee to decide the status of the appellant herein in order to determine whether the claimant was entitled to benefits. Sections 530 and 532 of the Unemployment Insurance Law gave the referee jurisdiction of the subject-matter.

The employer-appellant, while not represented at the hearing before the referee, served a notice of appeal to the Appeal Board in accordance with section 532 and requested that the Appeal Board either permit the introduction of evidence in addition to that submitted before the referee or remand the case for a further hearing before a referee.

The appellant stated that it failed to appreciate the fact that the issue of its status was involved. The Board granted the introduction of further evidence. The appellant appeared as a party before the Board and was given full and complete opportunity to introduce further evidence and to be heard on its claim that it was an exempt employer. All of the testimony before the Board was offered on behalf of the employer and no testimony was given by the claimant or were there any witnesses in her behalf. The appellant submitted a brief which was considered by the Board and the decision of the Board shows that the facts and the law called to its attention by the appellant were considered by it.

The appellant had at least its day in court before the Appeal Board as requested in its notice of appeal and it cannot be seriously contended that it did not have a full opportunity to present all of its evidence and its brief and to argue its case.

The first point urged by the appellant that the referee before whom the appellant appeared had no jurisdiction over the question of its status is not a serious one.

Whether or not the Doctors Hospital, Inc., is an exempt employer under paragraph (d) of subdivision 3 of section 502 of the Unemployment Insurance Law is the real question in the case.

Paragraph (d) of subdivision 3 of section 502 reads as follows: "The State of New York, municipal corporations and other governmental subdivisions, and any corporation, unincorporated association, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, shall not be employers subject to this article."

This language imposes two requirements for exemption, (1) the institution must be organized and operated exclusively for charitable purposes, (2) no part of the net earnings of which inures to the benefit of any private shareholder or individual.

The Appeal Board in its decision stated, "It is true that the institution is not engaged in business for the purpose of making profit for any private shareholder or individual."

The Unemployment Insurance Appeal Board also found the purposes for which it was formed were "to establish, buy, construct, lease or otherwise acquire, and to erect, maintain, equip and operate a hospital."

The Board held that the appellant did not operate a hospital exclusively for charitable purposes and, therefore, was not within the exemption defined in paragraph (d) of subdivision 3 of section 502 of the Unemployment Insurance Law.

The record shows that the hospital was organized exclusively for hospital purposes and is engaged exclusively in operating a hospital of a non-profit character.

That fees are charged by a university or hospital is not controlling as to its being a charity, for only when such income is devoted to the profit of the founders and not used to carry on the work by adding to the endowment, etc., does it show the institution is a business and not a charity. (*Butterworth* v. *Keeler*, 219 N. Y. 446; *Mills* v. *Society of New York Hospital*, 242 App. Div. 245; affd., 270 N. Y. 594; *Jewish Mental Health Society* v. *Village of Hastings-On-Hudson*, 255 App. Div. 77; affd., 279 N. Y. 764.)

" A hospital association not conducted for profit, which devotes all its funds, including those received from patients, exclusively to the maintenance and improvement of the institution is, therefore, a charity in every sense of the word." (Zollmann on American Law of Charities, p. 188; *Matter of MacDowell*, 217 N. Y. 454; *Matter of New York University* v. *Taylor*, 251 App. Div. 444; affd., 276 N. Y. 620; *Schloendorff* v. *New York Hospital*, 211 id. 125; *People ex rel. Trustees M. H. & A. Fund* v. *Miller*, 279 id. 137.)

Charitable purposes include non-profit hospital corporations, organized and operated exclusively for hospital purposes irrespective of whether they charge their patients for their services and facilities.

The use of the words " charitable purposes " in the Labor Law by the Legislature must be presumed to have been in accordance with their well-established meaning. " Words having a precise and well settled meaning in the jurisprudence of a country are to be understood in the same sense when used in its statutes, unless a different meaning is unmistakably intended." (*Perkins* v. *Smith*, 116 N. Y. 441; *Matter of Mohawk Mills Assn., Inc.*, 260 App. Div. 433.)

The appellant hospital is clearly entitled to an exemption under paragraph (d) of subdivision 3 of section 502 of the Labor Law of the State of New York.

The decision of the Unemployment Insurance Appeal Board should be reversed because the Doctors Hospital, Inc., is an exempt employer within the meaning of paragraph (d) of subdivision 3 of section 502 of the Labor Law of the State of New York, with costs to the appellant against the Industrial Commissioner.

HILL, P. J., and BLISS, J., concur; HEFFERNAN, J., dissents, in a memorandum; SCHENCK, J., dissents, in an opinion, and votes to affirm.

HEFFERNAN, J. (dissenting). I dissent and vote to sustain the decision of the Board. As I look at this question the hospital is

not exempt unless organized and operated exclusively for charitable purposes. The purposes outlined in the certificate of incorporation before us clearly demonstrate that this hospital is not organized exclusively for charitable purposes. The right of a corporation to exemption must be determined from the articles of incorporation alone and if any of its powers are not charitable, the corporation is not entitled to be classified as a charity. (*Matter of De Peyster,* 210 N. Y. 216; *Matter of Beekman,* 232 id. 365; *Matter of Kennedy,* 240 App. Div. 20; affd., 264 N. Y. 691; *Helvering* v. *Coleman-Gilbert,* 296 U. S. 369; *Matter of Mohawk Mills Assn., Inc.,* 260 App. Div. 433.) It seems perfectly clear to me from the certificate of incorporation of appellant that it could operate without ever doing one act of charity. Certainly it has no legal obligation to do so. In order to be classified as a charitable corporation, an entity must not only be permitted to engage in charitable activities but it should be compelled to do so by its charter.

SCHENCK, J. (dissenting). There are two issues involved here: (1) as to the jurisdiction of the referee and the Appeal Board to determine whether or not claimant worked for an employer subject to the Unemployment Insurance Law, and (2) whether or not Doctors Hospital, Inc., is an exempt employer under the provisions of the Unemployment Insurance Law.

I am not impressed with the appellant's contention that the referee and the Appeal Board lack jurisdiction. It was necessary that a decision be reached determining whether or not claimant was entitled to benefits, and by virtue of section 532 this determination devolves upon the Appeal Board, which is given specific power to affirm or reverse wholly or in part or to modify any decision appealed from. While the employer-appellant was not represented at the hearing before the referee, it did serve notice of appeal and appeared before the Board and was apparently given full opportunity to introduce evidence on its claim that it was an exempt employer.

The second issue as to whether or not Doctors Hospital, Inc., is an exempt employer under the Unemployment Insurance Law is the real question at issue here. A hospital as such is not *per se* a charity, but is subject to the Unemployment Insurance Law unless it is found that it is " organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual." (Unemployment Insurance Law, § 502, subd. 3, ¶ [d].) The corporate purpose, as found in the certificate of incorporation, is " to establish, buy, construct,

lease or otherwise acquire, and to erect, maintain, equip and operate a hospital." A later amendment provided that in the event of voluntary dissolution, any property remaining after the payment of all claims and demands should be transferred to such other corporation or association engaged in operating a hospital as should be determined by the board of directors. Being incorporated under the Membership Corporations Law, it may be assumed that it came within the definition of the statute as it then existed, which defined a membership corporation as one not organized for pecuniary profit.

The hospital contains 275 beds, fourteen of which are allocated to charity patients, although it appears that free patients to the number of twenty-five may be admitted. Doctors requesting the admission of free patients are required to certify that they are receiving no compensation whatsoever for treating such patients. The Board has found that the appellant did not operate a hospital exclusively for charitable purposes and was not within the exemption defined in paragraph (d) of subdivision 3 of section 502. The burden of establishing that it is a charitable institution rests upon the appellant. It cannot be found in its certificate of incorporation, for there is nothing in that document that prevents it from carrying out its corporate purposes without engaging in any charitable activities. Certainly, there is nothing in its charter to compel it so to do. " A grant of immunity to persons who, or property which, would otherwise be liable to assessment is never presumed. It will not be recognized unless granted in terms too plain to be mistaken. If there is any doubt as to the intent of the Legislature, it must be resolved in favor of the taxing power." (*County of Herkimer* v. *Village of Herkimer*, 251 App. Div. 126; *People ex rel. Westchester Fire Ins. Co.* v. *Davenport*, 91 N. Y. 574.)

The question here presented is whether the appellant has sustained the burden of establishing as a fact that it is entitled to the exemption. (*People ex rel. Outer Court, Inc.*, v. *Miller*, 161 Misc. 603; affd., 256 App. Div. 814; affd., 280 N. Y. 825.) I am unable to find that the appellant has by affirmative proof established that it is entitled to the exemptions provided by statute. It may well be that by erecting and operating a hospital it has to some extent lessened the burden of government; nevertheless, it is not extending its charitable services to all of the members of the community and its charity is limited to a very small proportion of bed patients and with the specific requirement that such charity patients, so called, shall secure a certificate from a doctor to the effect that he is receiving no pay from that particular patient. Finally, the reception of such patient in any event is contingent upon the availability of one of the fourteen beds set aside for charitable purposes. May it be

said that under such circumstances the primary and exclusive purpose of the appellant is the free administration to charity patients? We think not. Clearly, a hospital may claim exemption where it administers in part to pay patients and in part to patients unable to pay. Here, however, we are confronted with the fact that at best but a very small proportion of the hospital facilities is afforded charity patients and the obtaining of such facilities is contingent upon the availability of a comparatively small number of beds and upon a doctor's certificate that professional services will be rendered without fee. Appellant fails to meet the required proof to bring it within the provisions of the statute authorizing this exemption.

The decision of the Appeal Board should be affirmed, without costs.

Decision of the Unemployment Insurance Appeal Board reversed because the appellant is an exempt employer within the meaning of paragraph (d) of subdivision 3 of section 502 of the Labor Law, with costs to the appellant against the Industrial Commissioner.