[L. A. No. 18762. In Bank. Aug. 18, 1944.]

SCRIPPS MEMORIAL HOSPITAL, INC. (a Nonprofit Corporation), Respondent, v. CALIFORNIA EMPLOYMENT COMMISSION, Appellant.

(Three Cases.)

Robert W. Kenny, Attorney General, Clarence A. Linn, Deputy Attorney General, Forrest M. Hill and Doris H. Maier for Appellant.

Luce, Forward, Lee & Kunzel for Respondent.

Musick, Burrell & Pinney, Howard Burrell, Anson B. Jackson, Jr., and Phillip C. Jones as Amici Curiae on behalf of Respondent.

THE COURT.—A hearing was granted in this case, after decision by the District Court of Appeal, Fourth Appellate District, in order that it might be considered together with the case of Seaside Memorial Hospital v. California Employment Commission, post, p. 681 [151 P.2d 116]. We adopt the following opinion of Mr. Presiding Justice Barnard as the decision of this court:

This is an appeal from judgments in three actions, consolidated at the trial and on this appeal, which were brought to recover taxes or contributions paid under protest. The underlying question is whether the respondent is exempt from such payments under the California Unemployment Insurance Act, as amended (Stats. 1935, chap. 352; Stats. 1939, chaps. 628 and 630; Deering's Gen. Laws 1939 Supp., Act 8780d), which will be referred to as the act. On September 5, 1936, the respondent was granted such exemption under section 7(g) of the act. On April 5, 1941, the appellant revoked this exemption but granted an exemption under section 7(k). On March 6, 1942, the appellant revoked that exemption. The respondent then paid this tax covering a period from March, 1942, to September, 1942, under protest and brought these actions to recover the amounts paid. The court found in its favor and the Employment Commission has appealed. At all times material here the respondent has been exempted under similar provisions of the federal Social Security Act and other federal acts.

The respondent is a nonprofit corporation organized in 1924 under the laws of this state and since that date it has conducted a hospital, metabolic clinic and dietetic school at La Jolla. It has land, building and equipment costing some $800,000 and an endowment of about $700,000, all acquired through gifts made by Ellen Browning Scripps. In addition, several other funds have been established for the benefit of the respondent through gifts of various individuals which aggregate over $100,000. The trust under which these donations to the respondent were made by Miss Scripps and the articles of incorporation of respondent provide very completely and thoroughly that all funds acquired by the respondent in any manner shall be used solely for charitable, scientific and educational purposes, that no part thereof and no beneficial interest therein shall at any time vest in any of the members, officers or directors of the respondent, and that in the event of its dissolution at any time all property and funds shall be transferred to a similar corporation and used for the same purposes.

The court found, among other things, that this hospital and its departments were founded by Miss Scripps for the treatment of persons regardless of race, creed or ability to pay and

that such purpose has been fully carried out by the respondent; that the hospital and its departments have never at any time refused admission to anyone because of race, creed or inability to pay; that all who have sought admission have been received when the hospital and its departments were able to render any service; that no funds for the construction of said hospital or for the maintenance or operation of any of its departments were derived from any capital paid in by members or stockholders or shareholders but were provided exclusively from donations; that no part of the net earnings of the corporation have inured to or been paid to or for the benefit of any private shareholder or individual; that it also obtains funds, with which it conducts its affairs, from patients admitted and treated, from endowment funds, from contributions made by organized charitable organizations and from other contributions; that the hospital and its departments are open to everyone, poor patients and pay patients alike and to those unable to pay anything as well as to those able to pay a part or all of its charge for services; that it is the practice to make a full charge where a patient has the ability to pay, to make a lesser charge in proportion to their ability to pay where patients are able to pay something but not the full charge, and to make no charge to those unable to pay for the services received; that approximately 25 per cent of the services rendered by the various departments are rendered without pay; that all sums received from patients are used in the operation and maintenance of the hospital and its departments, and that no profit is or has been accumulated for any other purpose; and that no profits or accumulations have been shared by or distributed to any stockholders or individuals. The court also found that the respondent is not an employer under the provisions of the act; that it is organized and operated exclusively for charitable purposes and no part of its net earnings do or have inured to the benefit of any shareholder or individual; that the respondent is exempt from the requirements of the act under section 7(g) thereof; that the respondent is not subject to a tax under title IX of the Social Security Act of the United States (42 U.S.C.A., § 301 et seq.) and has been properly exempted from the payment of said tax by the proper officials of the United States Government; and that the respondent is exempted from the requirements of the act by section 7(k) thereof.

The appellant first contends that the court erred in denying its motion to dismiss these actions on the ground that the respondent had failed to exhaust its administrative remedies before filing this suit. The usual rule is thus stated in *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715], "The rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." It is argued that under section 45.5 of the act the commission is authorized to levy assessments where the employer neglects or refuses to make a return; that under that section the employer has the right to petition for a reassessment; that under section 90 the commission is given the power to adopt rules and regulations; that under rules 45.5 and 90.6, adopted by the commission, the employer is given the right to have an order revoking an exemption heard before the entire commission; that the respondent failed to seek such a review as permitted by these rules; and that it follows that it is not entitled to maintain this action.

Section 45.5, which was added to the act in 1939, provides that an employer against whom an assessment has been made may ask for a reassessment but it is not provided that this must be done before any other relief will be available. On the other hand, section 45.10, which was added to the act in the same year, expressly provides that any employer may pay any contribution sought to be collected under protest and may then bring an action to recover the amount thus paid.

As the court said in *Bodinson Mfg. Co.* v. *California E. Com.,* 17 Cal.2d 321 [109 P.2d 935] : "The only express provision for court review is made by section 45.10, which permits an employer to contest the legality of the contribution sought to be enforced against him by paying it under protest and then suing to recover the amount so paid."

If it may be said that there was here an administrative remedy provided by this statute and by the rules of the commission which was available to the respondent it cannot be said that that remedy was exclusive or that its exercise was a necessary precedent to the use of the other remedy expressly given by the statute. None of the cases cited in support of the usual rule go to the extent of holding that that rule applies as against another remedy expressly provided in the same

statute, which creates the administrative remedy. It would be somewhat illogical to require one who claims an exemption from such an assessment to follow a procedure in which he must ask for a pretended reassessment before he may follow the direct remedy applicable to his case which is also provided in the same statute and expressly made available to him. While the Legislature could have so provided we cannot believe that it intended to do so here. The right to pay under protest and bring such an action is directly given in this statute without qualification, and it is not for the courts to add conditions to the exercise of that right which are not imposed by the statute. Assuming that an administrative remedy existed the most that can be said is that alternative remedies were available to the respondent, and the court correctly refused to grant the motions to dismiss.

It is next contended that the court erred in holding that the respondent was entitled to exemption under section 7(g) of the act which exempts ''a corporation, community chest, fund or foundation, organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.''

The appellant first contends, generally, that the respondent is not such a corporation as was intended to be included in the exemption thus provided, even if no part of its net earnings inure to the benefit of any shareholder or individual, because only a small part of its operations are purely charitable in the sense that they are services rendered gratuitously to persons unable to pay therefor. Reliance is placed on certain language used in speaking of or defining charity and charitable purposes in various cases in this state involving trusts, bequests and torts. It relies particularly upon the case of *La Societe Francaise* v. *California Employment Com.,* 56 Cal.App.2d 534 [133 P.2d 47] and *California Employment Com.* v. *Betthesda Foundation,* 54 Cal.App.2d 348 [128 P.2d 874]. In the first of these cases it was held that the organization came within the usual rule applying to fraternal societies organized for the benefit of their own members. In the other case, it was held that the evidence sufficiently supported the finding that the net earnings inured to the benefit of certain individuals.

There are many cases in this and other jurisdictions defining charity and charitable purposes in various ways and with varying degrees of strictness and liberality depending upon such matters as the circumstances involved, the statutes or instruments in question, and the nature and form of the action or the particular question presented. It has generally been held that the fact that fees are charged by such an institution as a hospital is not controlling if these go to pay the expenses of operation and not to the profit of the founders or shareholders. It is also usually held that it is immaterial that such an institution is supported in part by full-pay or part-pay patients, and that it is the use to which any profit or income is devoted which is controlling. These general principles have been recognized in this state. (*Estate of Henderson*, 17 Cal.2d 853 [112 P.2d 605] ; *Estate of Bailey*, 19 Cal. App. 2d 135 [65 P.2d 102].) In *Estate of Merchant*, 143 Cal. 537 [77 P. 475], the following definition was approved:

" 'A charity in a legal sense may be more fully defined as a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons—either by bringing their hearts under the influence of education, or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government.' "

In *Dingwell* v. *Seymour*, 91 Cal.App. 483 [267 P. 327], the court said:

"Any person, the rich as well as the poor, may fall sick or be injured or wounded and become a fit subject for charity. (St. Luke, chapter 10, verses 30-37.) A trust may be and often is charitable in its nature, uses, and purposes without giving alms to the poor. It is true that poverty is a condition which, even when brought about by indolence and waste of life's opportunities, arrests the attention and commands the consideration of charity. Yet perhaps more worthy and deserving members of society than the ne'er-do-well poor may under certain conditions be proper objects of charity. A gift to establish and maintain a public institution where the misery and unhappiness of any person of high or low degree, rich or poor, may be considered and sanely dealt with would come within the purview of the definition of a public charity."

In *La Societe Francaise* v. *California Employment Com.*, 56 Cal.App.2d 534 [133 P.2d 47], the court said:

"The definition of charity originally, under a strict construction of the word, implies the giving of something, or the rendering of gratuitous service. However, by later usage and in common parlance its meaning is sometimes extended to embrace liberality and generosity by patrons or benefactors in conferring advantages of a social character other than the rendering of personal aid or the bestowal of alms. If used in a statute or legal instrument, the word must be defined in conformity with the purpose or intention of the law makers or the parties to the instrument."

In defining the phrase "operated exclusively for . . . charitable . . . purposes" in section 7(g), in conformity with the purpose of the law makers, the context and surrounding provisions should not be overlooked. In general, broad language is used. Among the organizations which are to be exempted are community chests and funds or foundations which ordinarily include in the scope of their operations many things aside from the relief of the poor and needy, in the strictest sense of the word charity. Again, the organizations to be exempted include also those organized and operated for religious, scientific, literary or educational purposes, and even those for the prevention of cruelty to children or animals. The wide and varied nature of the exemptions thus provided rather clearly indicates a purpose and intention to give the words here in question a broad rather than a strict meaning, and that it was intended, for exemption purposes, to apply the sort of standards to charitable institutions which are applied to the others named. In the broader meaning of charitable purposes the general principle usually applied in cases in this and other states is that such an institution as a hospital, in order to come within the meaning, must be one which is open to all persons irrespective of race, color, creed or ability to pay and must be one where no individual or entity may benefit or profit from its operation or from its assets on dissolution.

That the legislative purpose and intention in adopting the language used in section 7(g) were as we have suggested is also indicated by the fact that although the appellant commission had for some years thus interpreted section 7(g), as shown by its exemption of the respondent through all those

years, the Legislature, in extensively revising the act in 1939, made no change in that provision but instead enlarged the scope of such exemptions by adding the one provided for in section 7(k).

That this was the intention of the Legislature is further indicated by the fact that this act was adopted as a part of a plan for a uniform system of unemployment compensation then proposed and later adopted by the federal government and many of the states. (*Gillum* v. *Johnson*, 7 Cal.2d 744 [62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595].) ▮ The language used in section 7(g) is practically identical with that used in similar sections of the federal legislation and in that of many states, and is precisely similar to the language used in other federal statutes which have been in effect for many years. For that reason the interpretation placed upon that language by federal and other courts is unusually persuasive here. (*Union Oil Associates* v. *Johnson*, 2 Cal.2d 727 [43 P.2d 291].) In passing upon practically the same language in a case involving quite similar facts the Supreme Court of the United States said in *Trinidad* v. *Sagrada etc.*, 263 U.S. 578 [44 S.Ct. 204, 68 L.Ed. 458]:

"'The exceptions covered, among others, any corporation 'organized and operated exclusively for religious, charitable, scientific or educational purposes, no part of the net income of which inures to the benefit of any private stockholder or individual.' . . .

". . . Two matters apparent on the face of the clause go far towards settling its meaning. First it recognizes that a corporation may be organized and operated exclusively for religious, charitable, scientific, or educational purposes, and yet have a net income. Next, it says nothing about the source of the income, but makes the destination the ultimate test of exemption . . .

". . . That the transactions yield some profit is, in the circumstances, a negligible factor. Financial gain is not the end to which they are directed.

"Our conclusion is that the plaintiff is organized and operated exclusively for religious, charitable, and educational purposes within the meaning of the excepting clause."

In passing upon a similar question, involving the same language as used in the New York statute, the court said in *In re Mendelsohn*, 262 App.Div. 605 [31 N.Y.S.2d 435]:

"The record shows that the hospital was organized exclusively for hospital purposes and is engaged exclusively in operating a hospital of a nonprofit character.

"That fees are charged by a university or hospital is not controlling as to its being a charity, for only when such income is devoted to the profit of the founders and not used to carry on the work by adding to the endowment, etc. does it show the institution is a business and not a charity.

"A hospital association not conducted for profit which devotes all of its funds, including those received from patients, exclusively to the maintenance and improvement of the institution is, therefore, a charity in every sense of the word.

"Charitable purposes include nonprofit hospital corporations, organized and operated exclusively for hospital purposes irrespective of whether they charge their benefactors for their services and facilities."

This same interpretation has been given this or similar language in *Virginia Mason Hospital Association* v. *Larson*, 9 Wn.2d 284 [114 P.2d 976]; *Commissioner of Internal Revenue* v. *Battle Creek*, 126 F.2d 405, and in many other cases which might be cited. Our attention has been called to no case involving the same question where the holding has been to the contrary.*

Aside from the main legal question some contention is made that the evidence is not sufficient to support certain particular findings. A finding that 25 per cent of the services rendered by the respondent are rendered without pay is attacked. Not only is the exact percentage of such services which may be rendered immaterial, under the views above expressed, but the arguments here made are in the nature of criticisms of the method of bookkeeping employed and in the final analysis go only to the weight of the evidence. The most that can be said is that there was conflicting evidence in this regard. It is argued that other findings, to the effect that no part of the net earnings of the respondent have inured to the benefit of any private shareholder or individual, are

*Several recent cases give further support to the conclusions reached herein. (*Oklahoma State Fair* v. *Jones*, 44 F.Supp. 630; *City Club of Milwaukee* v. *United States*, 46 F.Supp. 673; *Aultman Hosp. Assn.* v. *Evatt*, 140 Ohio 114 [42 N.E.2d 646]; and see note, 55 Harv.L.Rev. 1055.) And an opinion of the Attorney General of the United States, dated November 2, 1943, discloses the intent of the federal statutes to exempt nonprofit hospital corporations from the operation of the Social Security Act.

not supported by the evidence because there is evidence that bonuses were given to the doctors employed by the respondent to conduct its operations and evidence that discounts had been given to members of the board of directors of respondent and their wives. With respect to the first of these matters it appears that certain doctors who were employed by the respondent worked on small salaries for a number of years and that in some more recent years certain fixed sums were divided between these doctors by way of additional compensation. Under the evidence the court was justified in considering these payments as a moderate, although temporary, increase in salary. The other criticism boils down to an instance where a member of the board of directors, who had been subjected to great expense because of his wife's illness, was given a discount from the regular rates. The evidence justifies the court's conclusion that this was done in conformance with the usual policy of charging in proportion to ability to pay. Upon oral argument it was contended that the finding that the respondent has never refused admission to anyone because of inability to pay is contrary to two letters which are in evidence. In 1937, a man at San Marcos wrote the respondent stating that his wife had an ulcer on her leg, that she "has been taking treatments from a local physician," that he would like to bring her in for diagnosis and treatment and asking what the cost would be, as his resources were limited. The respondent replied that it was "necessary that patients be referred to us by the physician in charge of the case," and suggested that the inquirer take advantage of the services of the county hospital. Aside from any other consideration, no direct refusal of admission here appears, there was nothing unreasonable in hesitating to take a case away from the physician in charge without a report from him, the entire matter presented a question of fact for the court, and it cannot be said from this incident alone that the finding is contrary to the evidence. In our opinion, the court's finding that the respondent is entitled to exemption under section 7(g) of the act is supported both factually and legally.

The appellant's final contention is that the court erred in finding that the respondent was entitled to exemption under section 7(k) of the act. That section provides for such exemption where the services are performed "in the employ

of a nonprofit organization or corporation, nonprofit safety organization, chamber of commerce, service club, or fraternal organization, where none of the foregoing corporations or organizations is subject to a tax under title IX of the Social Security Act.'' While the respondent has at all times been exempted by federal administrative rulings from the payment of any tax under title IX of the Social Security Act the appellant argues that it is not entitled to similar exemption under section 7(k), in the absence of a decision to that effect handed down by a federal court of competent jurisdiction. The interesting question is suggested as to just how such a corporation could proceed to obtain such a decision of a federal court when it had already been exempted by administrative ruling and no controversy existed. In any event, the respondent has been thus exempted by federal administrative rulings and many federal cases support those rulings in principle, although it is true that the respondent was not directly involved in those cases. This should be sufficient to establish an exemption under section 7(k) of our act, at least until such time as the respondent becomes actually subject to a tax under title IX of the Social Security Act. That this interpretation of section 7(k) conforms to the intention and purpose of the Legislature in adopting it is very strongly indicated by section 2 of the act which, after stating the purposes of the act as a part of a national plan of unemployment reserves and social security, goes on to provide, in effect, that the contributions required shall be collected only during times when similar contributions are required under federal legislation and against which the contributions under our act may be credited. It seems apparent that during the times here in question the contributions which the appellant seeks to compel the respondent to pay could not have been credited against any similar federal taxes. It would seem to follow that under any view of the matter the respondent was exempt from the contributions here in question under section 7(k) of the act and the court correctly so held.*

The judgment is affirmed.

---

*Appellant's suggestion that section 7(k) amounts to an unconstitutional delegation of the State's taxing authority to a federal agency merits little attention. In determining what institutions shall come within the exempt class, the Legislature may competently provide for uniformity with the classifications under the federal act.