Foster, J.
The New Opera Company, Inc. (hereafter called New Opera), appeals from two decisions of the Unemployment Insurance Appeal Board (hereafter called Board), which determined that appellant is an employer within the meaning of the Labor Law, and that claimants are covered employees. New Opera claims that, as a corporation organized exclusively for *719 educational purposes, and with no part of its net earnings inuring to the benefit of any private shareholder or individual, it is exempt from provisions of such law.
Subdivision 4 of section 560 (formerly § 502, subd. 3, par. [dj) of the Labor Law relating to unemployment insurance provides in part: “ any corporation, unincorporated association, community chest, fund, or foundation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, shall not be employers liable for contributions under this article
From the foregoing it is obvious that any group or body claiming exemption must meet three tests. First, it must be organized exclusively for one or more of the exempt purposes; second, it must be operated exclusively for such purpose or purposes; and third, no part of its net earnings may inure to the benefit of any private individual.
The appellant New Opera was incorporated as a membership corporation under the laws of the State of New York, with the consent of the Acting State Commissioner of Education. The purposes stated in its certificate of incorporation were: “ * * * to cultivate, promote, foster, sponsor and develop the understanding, taste and love of the musical arts, and to lawfully do all and everything necessary, suitable and proper for the attainment of any of the purposes, the accomplishment of any of the objects or the furtherance of any of the powers hereinabove set forth * * There is no provision in the certificate for the issuance of any capital stock or the distribution of any profits.
There is no dispute as to the organization and operation of appellant, and the Board has so stated in its decision. Among other things the Board found that appellant was founded by a group of devotees of music who were concerned with the future of light opera and the plight of young artists in this country. It maintains itself by box office receipts, gifts and contributions from its sponsors and patrons. One of its objects was to give employment to young American artists, and to present operas in English at low prices. It also sought to create opportunities for graduates of American music schools to further their careers. In view of the fact that there was but one permanent opera company in this country, the Metropolitan, such opportunities for young and untried artists were decidedly limited; and because of the war there was no opportunity for training in Europe. In *720 the words of the Board it sought to provide a fertile soil for the growth of native singers in operatic works, and maintained a work shop to train its singers in stage techniques. All singers who applied were given an audition. Competition was sponsored for an American one act opera. Free admissions were given to school children, service men, student nurses and the blind. Many of the singers aided by appellant found employment with outstanding opera companies of this country.
Another objective of appellant was to popularize opera itself, and to enlarge the repertoire ordinarily available to the public. During its first season it presented Mozart’s “ Cosi Fan Tutte,” Offenbach’s “La Vie Parisienne,” Tchaikovsky’s “Pique Dame,” and Verdi’s “ Macbeth,” the latter being presented in the Italian language. In the fall of 1942 appellant produced the operetta “ Rosalinda,” and upon the method of handling this production the Board has based in part its decision for denying exemption to appellants. Various persons loaned money to appellant for the purpose of financing this production. One Lodewick Vroom was employed by appellant under a written contract to manage and direct the production of “ Rosalinda ” for a salary of $250 a week plus $150 a week for the use of his office facilities. This agreement further provided that after setting up a reserve fund of $15,000 against losses and other contingencies all profits derived from the production of this operetta were to be divided weekly by payment of 95% to appellant and 5% to Vroom. The agreement also provided that Vroom’s interest of 5% of the excess of gross receipts would survive the termination of the agreement, but as to rights in pianola and phonograph records, and production rights outside the English speaking countries, such interest was limited to two years; and in the case of production rights in English speaking countries other than the United States and Canada this interest was limited to five years after the termination of the agreement. The agreement also provided that it was to remain in full force and effect during the continuous presentation of 1 ‘ Rosalinda ’ and during the winding up of the affairs of that production.
The foregoing facts are taken from the findings of the Board and there is evidence in the record to support them. Although not found by the Board it appears that most of the operas presented by appellant were produced at a financial loss. “ Rosalinda ” was an exception and had a very successful run.
The Board also found that in July, 1943, the appellant borrowed money from various persons to produce the “ Merry *721 Widow ”. It agreed to repay such loans out of net profits. This agreement provided that after establishing a reserve fund of $15,000, and after the repayment of the amounts loaned to the employer, the balance of the profits was to be divided equally between the appellant and the loaners. A similar agreement was made in February, 1944, for the production of ‘1 Helen Goes to Troy ”. Unemployment insurance taxes were paid on the wages of the employees in both of these productions. Appellant insists that these matters are not germaine to the issue because New Opera was not required to make any financial contribution for the production of these operas and was to receive as a gift 50% of the net profits. The agreements concerning these productions, so appellant asserts, created joint ventures and were not activities of New Opera, and the persons employed in these productions were employees of a joint venture. Evidence concerning these matters was admissible on the theory that it was competent to show all activities of appellant which related in any way to its method of operation.
Upon the Board’s findings of fact, which we have stated at some length and which are final under the mandate of the statute, the Board decided that appellant was not exempt. This decision was based upon two grounds: (1) that appellant was not an educational organization within the meaning of the Labor Law; and (2), that even though it were it was not entitled to an exemption during the period of claimant’s employment because part of its net earnings inured to the benefit of individuals.
In support of the first ground the Board cited a decision of this court, in the Matter of Peoples Theatres, Inc. (266 App. Div. 694). In that ease we. had before us a membership corporation which included among its corporate purposes the promotion of public interest in the contemporary theatre arts, increasing co-operation among playwrights and all others connected with the contemporary theatre arts, including the improvement and the social, educational, artistic and social welfare of persons engaged in theatre work. We held that such a corporation was not organized and operated exclusively for educational purposes within the meaning of the statute, and that its corporate activities went far beyond the statutory exemption for educational purposes. The parallel between the purposes and activities of the appellant herein and the employer in the case cited is striking. Each sought to promote public interest in its own field of art, one in modern opera and the other in general thea *722 trical productions; and both attempted to improve the educational and artistic status of those engaged in the two contemporary fields of art. But these purposes and activities, commendable as they may be, are not sufficient to establish an exemption on the theory that they are exclusively educational, literary or charitable. Of course the term educational may be construed with great latitude. For example the great English philosopher Mill included under it everything “ which helps to shape the human being.” In the broadest sense all human experience may be construed as educational. In framing a tax statute, however, we can scarcely believe that the Legislature intended so wide a concept. The almost unlimited potentialities inherent in such an interpretation would tend to defeat the main purpose of unemployment insurance.
Furthermore in construing a statute of this character, in order to arrive at the intent of the Legislature, we must apply to its language the meaning and effect generally attributed to words by the common speech of men, and not some esoteric standard held by a more select or cultured group. Tested in this manner we are constrained to hold that the activities of an organization in aiding singers and sponsoring operatic productions are not ordinarily viewed as exclusively educational or charitable. We cannot, therefore, distinguish these activities from the purposes cited in the Matter of Peoples Theatres, Inc. (266 App. Div. 694, supra).
As to the Board’s other point that appellant failed to satisfy the statute because it distributed part of its net earnings to individuals, we are not so inclined to agree. The term net earn- x ings means to us the amount left after the total cost of production, and the latter would include the repayment of all loans and the payment of all services incident to the production of gross income. On this basis we fail to find any proof that New Opera distributed-any of its net earnings to private individuals. But irrespective of this we think the first ground cited by the Board requires us to affirm its decision. We are not unmindful that in a case said to be quite similar to this, involving the Metropolitan Opera Company .of New York, the Board decided differently; but we cannot regard the decision in that case as a precedent in view of the foregoing.
The decisions should be affirmed, without costs.
Heffernan and Brewster, JJ., concur; Hill, P.J. and Bus-sell, J., dissent in the following statement: Appellant is incorporated solely for educational purposes in the field of opera *723 and music. It docs not operate for profit and no part of its earnings inure to the benefit of the sponsors. The decisions of the Appeal Board of the New York State Department of Labor should he reversed and the appellant determined to be exempt under the New York State Unemployment Insurance Law. (Matter of Mendelsohn, 262 App. Div. 605, affd. 295 N. Y. 691.)
Decisions affirmed, without costs.