**MATANUSKA–SUSITNA BOROUGH,**
**Appellant,**

v.

**KING'S LAKE CAMP, Appellee.**

**No. 857.**

Supreme Court of Alaska.

April 12, 1968.

Harland W. Davis, Anchorage, for appellant.

Wendell P. Kay, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

The principal issue presented in this appeal concerns the trial court's determination that King's Lake Camp was, by virtue of its charitable status, exempt from taxation by the Matanuska-Susitna Borough.

Article IX, section 4 of the Alaska constitution provides in part that:

All, or in any portion of, property, used exclusively for non-profit religious, charitable, cemetery, or educational purposes, as defined by law, shall be exempt from taxation.

In defining the limits of its taxing powers, the Alaska Legislature enacted AS 29.-10.336(a) which declared exempt from taxation

all property used exclusively for nonprofit religious, charitable * * * or educational purposes * * *.

Subsection (c) of this same statute qualifies this exemption by providing that:

Property or part of the property described in (a) * * * from which rentals or income are derived is not exempt from taxation under (a) of this section, unless the rentals or income are derived from the rental of the property by religious or educational groups for classroom space.

The Matanuska-Susitna Borough came into existence on January 1, 1964. Thereafter, the Borough enacted Ordinance No. 64–1 where, by virtue of section 1(b), prop-

erty "used exclusively for religious, educational, or charitable purposes" was exempted from Borough taxation. It was further provided in subsection (d) of the Borough's ordinance that, "If a religious, educational, or charitable organization * * * derives rentals or profits from its property, that property is not exempt."

The Borough's first point in this appeal is that since King's Lake Camp derived non-classroom rentals and income from its property, the trial court erred in concluding that the camp was entitled to tax-exempt status.

The record discloses the following pertinent facts regarding the nature of the appellee King's Lake Camp:[1] Although there is some winter camping, the main season at appellee's camp is timed to correspond with school vacation. Most of the children and other campers who use appellee's property are members of "user groups."[2] Typical of the "user groups" which actually utilize appellee's facilities are the Alaska Crippled Children, American Baptist Church, Camp Fire Girls, Y.M.C.A., and 4-H Clubs. Every user group pays to appellee the sum of $3.25 per day for each child using appellee's facilities. In the event a child is financially unable to pay the $3.25 daily user fee, the practice has been for the particular user group itself to make payment. The record further shows that the $3.25 daily user fee did not defray the operational expenses of the camp.[3] In order to obtain capital for expansion of the camp's facilities, each user group organization is assessed $250 annually.[4]

In the deposition of appellee's corresponding secretary it was disclosed that:

Each user group has their own program. * * * All we do is offer these user groups properly run facilities, a manager, the kitchen help and they establish their own program.

\*     \*     \*     \*     \*     \*

They do whatever it is for the 4-H program comes in and at that time I think they do extra work on their 4-H program, you know, as a whole over the year. Church groups come in have their training session for their church program, and we don't furnish any of that. Each group is responsible for their own program during that time.[5]

Appellant Borough argues that the legislature of the State of Alaska has, through the enactment of AS 29.10.336(c), severely limited tax exemptions for property used exclusively for nonprofit religious, charitable, or educational purposes. On the basis of the facts which we have referred to, appellant contends that appellee is not exempt from taxation because of the rents, or income which it received in the form of $3.25 payments from user groups based upon the daily individual camper occupancy of appellee's facilities.[6]

Appellant has raised a question of first impression concerning the construction of subsection (c) of AS 29.10.336 and its rela-

---

1. The factual data have been derived from the supporting and opposing documents which accompanied the motion for summary judgment made in the superior court by appellee.

2. In addition to the user groups, appellee also has approximately fifty individual members who purchase a membership by payment of a $2 annual dues charge. Members of this group are not entitled to use the camp's facilities for camping purposes.

3. Expenses of operation were alleged to include the purchasing and furnishing of food and the payment of the salaries of six employees.

4. In addition to the $3.25 individual user charge and the $250 annual user organizational charge, appellee received donations from individuals and organizations to help meet operating expenses.

5. In her deposition, the corresponding secretary of appellee Camp also stated that the camp had swimming and outdoor sports, boating, hiking, nature studies, trail blazing, and handicraft work. This witness further testified the camp was in the process of constructing a chapel.

6. During 1964, the year in question, the evidence shows that a total of approximately 1,500 campers used appellee's facilities.

tion to subsection (a) of the same enactment.[7] We believe that appellant's interpretation of subsection (c) of AS 29.10.336 is too restrictive. There are numerous precedents from other jurisdictions holding that a benevolent or charitable undertaking is not shorn of tax-exempt status because it charges fees and thereby realizes rent or income from its property. Pertinent here is Young Men's Christian Ass'n of Los Angeles v. Los Angeles County [8] where the Supreme Court of California said:

Defendants further argue that since plaintiff rents the dormitory rooms at its respective branches, their tax exemption would run counter to the statutory provision that the property in question 'not [be] used or operated by the owner * * * for profit regardless of the purposes to which the profit is devoted.' * * * However, such contention misconstrues the purport of the stated prohibition. It is true that plaintiff requires its dormitory residents to pay a moderate rental for the rooms in keeping with the modest scale of furnishings, and so realizes income which is used to defray operating expenses. But under the stipulated facts, it does not appear that there was any real profit motive in such undertaking as integrated into plaintiff's recognized religious and charitable objectives.

\* \* \* \* \* \*

\* \* \* Therefore, income derived by plaintiff here from dormitories maintained for its members in the normal pursuit of its exempt purposes, that is to say, from a facility which is incidental to and reasonably necessary for the accomplishment of its exempt purposes, is to be distinguished from income derived from a facility which is not so correlated with its exempt purposes.[9]

◼ We find this decision persuasive and believe its rationale points to a reasonable interpretation of the limiting provisions of AS 29.10.336(c). In short, property which is used exclusively for nonprofit charitable purposes does not thereby become disqualified for a charitable tax exemption solely because rents or income are derived therefrom. If it appears that the rentals or income are not derived as a result of a dominant profit motive on the charity's part, but are incidental to and reasonably necessary for the accomplishment of its charitable purposes, then such rentals or income are not within the ambit of AS 29.10.336(c)'s.

7. Neither party has cited or relied upon any legislative history pertaining to the statute in question. We do not decide this case with reference to the ordinance since both parties appear to have proceeded on the assumption that the statute controls.

8. 35 Cal.2d 760, 221 P.2d 47, 53–54 (1950).

9. In Fredericka Home for the Aged v. San Diego County, Cal.App., 206 P.2d 931, subsequent opinion, 35 Cal.2d 789, 221 P.2d 68, 71 (1950), it was said:
[T]he controlling consideration in determining whether an institution such as plaintiff should be classified as a charitable one is not whether a few or all of the recipients of its benefits may make reasonable contributions toward defraying the cost of such benefits, but whether such contributions as are made do not exceed what is required for the maintenance of the institution at a reasonable standard and are devoted to the purposes for which the institution was founded, which purposes, in the absence of the required contributions, would clearly be deemed to be charitable. If such is the situation, then the institution is no less a charity because of the receipt of such contributions * * *.
See State ex rel. United Seamen's Serv., Inc. v. City of New Orleans, 209 La. 797, 25 So.2d 596, 600 (1946), which involved the question of the status of a purported charitable hotel for indigent members of the merchant marine. There the court said:
The important fact is that no charge is made for any service rendered by the hotel except such charges as are necessary to continue the operation of the facilities, and to make the institution as nearly self-sustaining as it can be made.
See also City of Asbury Park v. Salvation Army, 26 N.J.Misc. 170, 58 A.2d 216, 218 (1948).

limitation upon properties which qualify for a charitable exemption.

In reaching this conclusion we find inappropriate the authorities relied upon by appellant.[10] One of the two principal decisions relied upon is this court's opinion in Evangelical Covenant Church of America v. City of Nome. [11] In that case the church operated a radio station which was used partially for commercial purposes. Air time was sold to commercial enterprises having no connection to the church or affinity with any of its aims. There we held that "the property and facilities of radio station KICY are subject to the ad valorem tax since they are not used exclusively for religious purposes.[12] Even though the funds generated by the radio station were used for religious purposes, we held they were taxable because operation of the radio station was not itself the "direct and primary purpose" of the church.[13]

■ Unlike the Evangelical Covenant Church case, the receipt of income and rentals by appellee was incidental to and reasonably necessary for the carrying out of the primary charitable purposes of the camp. As has already been pointed out, such moderate user fees as were charged by appellee do not appear to have been inspired by a dominant profit motive.

Appellant's second point in this appeal is that article IX, section 4 of the Alaska constitution requires that those properties of nonprofit charitable, religious, or educational groups which are to be exempt from taxation be "defined by law." Since nowhere in AS 29.10.336(a) is an entity possessing the characteristics of appellee's camp defined as eligible for tax exemption as a charity, appellant contends the superior court erroneously decided this issue in appellee's favor.[14]

■ Neither in Alaska's constitution nor in our general laws are the terms "charity" or "charitable purposes" defined. In such circumstances, resort to the common law definition of these terms is appropriate. The broad scope which has been given to the terms "charity" and "charitable purposes" is typified by the statement of the court in Old Colony Trust Co. v. Welch,[15] where it was said:

It is quite clear that what is done out of good will and a desire to add to the improvement of the moral, mental, and physical welfare of the public generally comes within this meaning of the word 'charity.' To crowd out coarseness, cruelty, brutality from social man undoubtedly results in this betterment.

[I]t has been held in a great majority of jurisdictions that a beneficent institution is not entitled to an exemption from taxation on its property used in the commercial business of publishing or selling literature even though the funds derived in this manner are exclusively devoted to beneficial purposes, but that such property will be considered as tax exempt if the publication or the sale of literature is the direct and primary purpose of the beneficent institution.

10. Appellant cites Oregon Methodist Homes, Inc. v. Horn, 226 Or. 298, 360 P.2d 293, 301 (1961). There the court said in part:

[T]he dominant and controlling motive of the Manor was primarily to benefit the founders economically and not with a purpose or means of furthering works of charity.

From the foregoing, it is clear that the court ruled against tax-exempt status not because the entity collected fees, but because it had not rendered any services to any persons other than its founders.

11. 394 P.2d 882 (Alaska 1964).

12. Id. at 885.

13. In our opinion in Evangelical Covenant Church of America v. City of Nome, 394 P.2d 882, 883 (Alaska 1964), we quoted the following language from Annot., 154 A.L.R. 895, 898 (1945):

14. Appellant, in part, contends here that the charging of a user fee negates the possibility of appellee's attaining charitable exemption status. We believe that this portion of appellant's argument has been answered by the discussion of the user fee aspects of this appeal in relation to AS 29.10.336(c).

15. 25 F.Supp. 45, 48 (D.Mass.1938).

Both in England and the United States it has frequently been held that the providing of recreational facilities, such as accommodations for campers, is a charitable use of the property.[16] In order to qualify as a charitable undertaking, it is not necessary that the beneficiaries of the charity be indigent or needy. It has been said in resolving questions of charitable status that:

> Financial standing is not necessarily a criterion. * * * [T]he classic definition of Lord Camden, Eighteenth Century Chancellor of England [was] that charity is 'A gift to a general public use, which extends to the poor as well as to the rich.' [17]

In our opinion the record in this case demonstrates that the King's Lake Camp properties were used for "charitable purposes" as that term has been defined at common law. In addition to the factual details of the nature and operation of the camp, which have previously been referred to, it is also of significance that appellee's articles of incorporation provide in part that the camp is organized "for the purpose of operating a religious, educational, social, charitable, and recreational non-profit camp."

We, therefore, hold that the trial court correctly ruled that the properties of appellee were used for nonprofit charitable purposes and that the charging of a $3.25 per day user fee did not divest appellee's properties of their tax-exempt status.

Brief reference will be made to appellant's four remaining points in this appeal.

In its judgment, the superior court restrained appellant from collecting, or attempting to collect, both real property and personal property taxes from appellee. Appellant argues that, "Nowhere in the record of this case has there been offered any evidence relating to the issue of personal property taxation upon which the court could base such a judgment." Examination of the record reveals that at no time did appellant argue the question now sought to be raised or attempt to show that any of appellee's personalty was used for noncharitable purposes. These circumstances when coupled with the fact that the applicable laws involved do not draw any distinction between real or personal property, have led us to conclude that appellant's third point is without merit.[18]

Appellant's fourth point is that the trial court did not limit its injunction restraining collection of taxes from appellee to 1964, the year in question. Since we have concluded to remand the case to the superior court for further proceeding with respect to

---

16. In Greater Lowell Girl Scout Council v. Town of Pelham, 100 N.H. 24, 117 A.2d 325 (1955), property held for the purpose of providing "swimming, boating, nature studies, camp crafts, arts and crafts, hiking, and overnight camping" was declared charitable and therefore exempt from taxation. St. Louis Council, Boy Scouts of America v. Burgess, 362 Mo. 146, 240 S.W.2d 684 (1951) (development of worthy qualities among young boys); Charter Oak Council, Inc., Boy Scouts of America v. Town of New Hartford, 121 Conn. 466, 185 A. 575 (1936) (operation of the camp facility held tax exempt on the bases of both educational and charitable use). See also Christian Businessmen's Comm. of Minneapolis v. State, 228 Minn. 549, 38 N.W.2d 803 (1949), and Waddell v. Young Men's Christian Ass'n, 133 Ohio St. 601, 15 N.E.2d 140, 142 (1938), where the charitable definition advanced

was "all which aids man and seeks to improve his condition."

17. Topeka Presbyterian Manor, Inc. v. Board of County Comm'rs of Shawnee County, 195 Kan. 90, 402 P.2d 802, 808 (1965). Accord, Fredericka Home for the Aged v. San Diego County, 35 Cal.2d 789, 221 P.2d 68, 71–72 (1950); Scripps Memorial Hosp., Inc. v. California Employment Comm., 24 Cal.2d 669, 151 P.2d 109, 113 (1944); In re Henderson's Estate, 17 Cal.2d 853, 112 P.2d 605, 608 (1941).

18. See Alaska const. art. IX, § 4; AS 29.10.336; and Ordinance No. 64–1 §§ (b) and (c).

In our code section relating to general rules of statutory construction, AS 01.10.060(9) provides, "In the laws of the state, unless the context otherwise requires, 'property' includes real and personal property."

a minor aspect of the proceedings, we believe it appropriate that upon remand the judgment entered below should be modified to limit its terms to the year 1964.[19]

The "minor facet" of this litigation which requires remand arises from the presence in the record of evidence that there are on appellee's property certain "buildings which were unused and dilapidated." Appellant contends that if these buildings were in fact unused, then the buildings themselves and the land beneath them do not qualify for tax-exempt status. We agree with appellant's contention and hold that there are factual issues to be determined as to the status of these buildings. It is therefore necessary that this aspect of the case be remanded to the trial court for further proceedings.[20]

Appellant's final point concerns certain claimed procedural irregularities. More particularly, it is contended that appellee incorrectly instituted an action for both declaratory and injunctive relief instead of first paying the 1964 Borough taxes under protest and suing for their recovery.[21]

The record shows that in its complaint appellee sought both declaratory and injunctive relief against the Borough's attempt to levy the taxes in question. After issue was joined, the Borough itself moved to consolidate its tax foreclosure action, then pending against appellee's property, with appellee's action for injunctive and declaratory relief. The Borough's motion was granted. The procedural points now urged as error were not emphasized in the subsequent superior court proceedings. Under these circumstances, we are of the opinion that resolution of the procedural questions appellant now attempts to raise should await a more appropriate occasion.[22]

The superior court's judgment is affirmed and the case is remanded for further proceedings not inconsistent with the foregoing.

19. There are authorities to the effect that such a judgment would be res judicata for subsequent years subject to modification upon a showing of changed circumstances. People ex rel. Carr v. Omega Chapter of Psi Upsilon Fraternity, 324 Ill. 540, 155 N.E. 279 (1927).

See City & County of Denver v. Denver Tramway Corp., 187 F.2d 410, 416 (10th Cir. 1951). See also Milk Wagon Drivers' Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941); United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932); Hygrade Food Prods. Corp. v. United States, 160 F.2d 816 (8th Cir. 1947).

20. Compare the remand in State v. 7.536 Acres, 431 P.2d 897 (Alaska 1967).

21. It is further asserted that appellee failed to obtain a ruling from the Borough Board of Equalization and thereby failed to exhaust its administrative remedies.

22. It is generally held that injunctive relief is not available against the collection of public revenue. Court of County Revenues for Lawrence County v. Richardson, 252 Ala. 403, 41 So.2d 749 (1949); Kent v. Murphey, 207 Ga. 707, 64 S.E.2d 49 (1951); Morris Tp. v. Washington Heights Dev. Co., 137 N.J. Eq. 595, 46 A.2d 45 (1946). See the following pre-statehood Alaska authorities to the same effect: Mullaney v. Hess, 13 Alaska 276, 189 F.2d 417 (9th Cir. 1951) (holding that where an adequate remedy at law exists an injunction will not lie); Valentine v. City of Juneau, 36 F.2d 904 (9th Cir. 1929); Libby, McNeill & Libby v. Cramer, 6 Alaska 219 (1st Div. 1920).

However, some authorities do make an exception to the above rule when the tax attempted to be levied is upon exempt property. Budberg v. Sangamon County, 4 Ill.2d 518, 123 N.E.2d 479 (1954), appeal dismissed, 350 U.S. 803, 76 S.Ct. 53, 100 L.Ed. 722 (1955).