In the Matter of the Claim for Benefits under Article 18 of the Labor Law, Made by JOSEPH H. CARROLL, Claimant.

NEW YORK MILITARY ACADEMY, Employer, Appellant; FRIEDA S. MILLER, as Industrial Commissioner, Respondent.

In the Matter of the Liability for Unemployment Insurance Contributions under Article 18 of the Labor Law of NEW YORK MILITARY ACADEMY, Employer, Appellant; FRIEDA S. MILLER, as Industrial Commissioner, Respondent.

Third Department, January 7, 1942.

*Hardy, Stancliffe & Hardy* [*George T. Barker* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor General*, and *Francis R. Curran, Assistant Attorney-General*, of counsel], for the respondent.

*Dominick G. Cronin*, for the claimant.

CRAPSER, J. On February 18, 1889, four residents of the counties of Westchester and Orange executed a petition to the Board of Regents of the University of the State of New York, requesting a provisional charter for the corporation, which was issued on May 1, 1890. The petition stated that the petitioners were desirous of founding an academy with a capital stock of $40,000, to be divided into shares of $100 each, and that subscriptions to said capital stock had been procured in the amount of $6,400.

On April 22, 1893, a second petition was executed and filed by the trustees of the academy which provided in part as follows: " It is the desire of the stockholders of said Academy who are Charles J. Wright Margaret W. Wright and Gertrude B. Peck to have said institution incorporated with a capital stock of $40,300, all of which is now paid in under the name of the New York Military Academy."

As the result of the latter petition, on June 21, 1893, the Board of Regents declared said provisional charter to be absolute by the issuance of a formal charter.

The academy was organized and is operated as a school which provides a standard curriculum of secondary education; it conducts courses preparatory for entrance to college or for further instruction in the military field, and has continued to do so from the date of its provisional charter.

The academy operated in its original buildings until January, 1910, when the buildings were destroyed by fire. Shortly thereafter a stock corporation known as the New York Military Academy Realty Company was organized pursuant to the Business Corporations Law of the State of New York. This corporation acquired title to all of the real property and equipment formerly used in connection with the operation of the academy and this New York Military Academy Realty Company has leased since 1910 to the academy the property and equipment used in the operation of the academy. This was the situation as of January 1, 1936, and thereafter, the time as to which the Board held that the academy was subject to the Unemployment Insurance Law.

The board of trustees of the academy in which the charter vests the power and authority to conduct the academy is a self-perpetuating body. The trustees of the academy at no time ever received

compensation for their services. Some of the trustees for some years past have rendered services to the academy either as instructors or administrators, for which services they have been paid a reasonable compensation. If the academy ever had any shares of stock outstanding under its charter they ceased to exist or were called in in 1910 or before and no shares of stock of the academy have been outstanding since 1910.

The lands and buildings which the academy have used in its operation have increased from 1910 to 1936 when they consisted of more than 334 acres and thirty odd buildings, which included among others four athletic fields, a parade ground, tennis courts, rifle range, cavalry drill grounds, troop roads, the academy building, chapel and canteen, mess hall, kitchen, store room, hospital, barracks, gymnasium, swimming pool, laundry, fraternity houses, apartment house, garage, stables and some fifteen residences. The reasonable value of the property exclusive of equipment was somewhere between $700,000 and $1,000,000.

During the entire period from 1910 to date all of the property and equipment required by the academy have been owned by the realty company and made available to the academy under a leasehold arrangement. The provisions of the lease dated March 23, 1926, between the academy and the realty company, which was operative on January 1, 1936, and thereafter, was for a term of twenty years with a provision for a renewal upon the same conditions for a further term of twenty years.

As of January 1, 1936, the academy was operating under a leasehold arrangement entered into some ten years prior thereto. Under this leasehold arrangement the appellant was assured of having available all necessary properties with which to operate the academy. As a rental for the properties of the realty company used by the academy, the academy covenanted in said lease to pay and was paying in 1936 and has continued to pay certain expenses in connection with the operation and maintenance of the properties and a " yearly rental of an amount equal to the yearly net earnings of " appellant " after all its expenses and obligations have been paid."

The net earnings as used in the lease mean the difference between the gross income or receipts of the academy and the certain expenses incidental to the use of the properties which the academy undertook specifically to pay. This difference, once it was determined, was paid over by the academy to the realty company as compensation for the academy's use of the properties and equipment and such payment constituted rent paid by the academy. After the academy had paid its rent to the realty company it had no earnings whatsoever.

The academy has been exempt from taxes imposed by the Federal Social Security Act and the Federal Income Tax Law.

Paragraph (d) of subdivision 3 of section 502 of the Unemployment Insurance Law (Labor Law, § 502, subd. 3, ¶ [d]) provides: " The State of New York, municipal corporations and other governmental subdivisions, and any corporation, unincorporated association, community chest, fund, or foundation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, shall not be employers subject to this article."

The Board has held that the academy was organized and operated exclusively for educational purposes and thus it met the first requirement of section 502, subdivision 3, paragraph (d).

The sole question presented upon this appeal is whether the academy has met the second requirement of the provisions of section 502, subdivision 3, paragraph (d), i. e., whether the appellant has established that no part of the net earnings of the appellant inures to any private shareholder or individual.

There is no proof in the record that any stock was ever issued, the nearest approach being the petition asking for the charter; if any stock ever was issued it has not been in existence since 1910 and none was in existence on January 1, 1936, when the academy was operating upon properties both real and personal which were leased by it. No question was raised in the record about the reasonableness of the rent that the academy was paying the realty company for the use of its land and equipment. There is no proof in the record that the appellant, the academy, has any shareholders.

It has been held by the Board that " since the power exists in the employer to issue dividend paying stock, there is the possibility of net profits inuring to the benefit of a ' private shareholder.' "

There were no private shareholders and no stock was outstanding and the academy had no net earnings. Under its contract with the realty company all of its net earnings after the payment of certain specified expenses had to be paid over to the realty company as rent for the use of the property and equipment.

This case was determined by the Board upon the theory that at some future time, under its charter, the appellant might have net earnings which might inure to the benefit of its shareholders.

In determining whether the appellant is entitled to the exemption we have no concern with possibilities. The facts, circumstances and conditions as they existed during the period of 1936 and thereafter are determinative that the appellant had no stock outstanding, had no shareholders and had no net earnings which could inure to the benefit of any private shareholder or individual.

The facts in the record fail to support the decisions of the Appeal Board and the decisions are without evidence to support them.

The appellant is entitled to the claimed exemption under all the evidence in the record and the decisions of the Unemployment Insurance Appeal Board should be reversed, with costs to the appellant.

BLISS, HEFFERNAN and SCHENCK, JJ., concur; HILL, P. J., dissents upon the ground that the two corporations, the academy corporation and the realty company, should be regarded as a single legal entity by which profits may be enjoyed.

Decisions of the Unemployment Insurance Appeal Board reversed, with costs to the appellant.