In the Matter of the Claim of GRAYCE F. HENRY, Respondent AMERICAN KENNEL CLUB, INC., Appellant; EDWARD CORSI as Industrial Commissioner of the State of New York, Respondent.

Third Department, March 7, 1945.

*Goldsmith, Jackson & Brock (Arnold J. Brock* and *White & Case* of counsel), attorneys for appellant.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Francis R. Curran, Assistant Attorney-General* of counsel), for respondent State Industrial Commissioner.

HEFFERNAN, J. The sole issue on this appeal is whether appellant is entitled to exemption as a corporation organized and operated exclusively for scientific purposes, no part of its net earnings inuring to the benefit of any private shareholder or individual.

Appellant claims exemption under paragraph (d) of subdivision 3 of section 502 (now § 560, subd. 4) of chapter 31 of the Consolidated Laws, being part of article 18 thereof, known as the Unemployment Insurance Law, the pertinent provisions of which are: " The state of New York, municipal corporations and other governmental subdivisions, and any corporation, unincorporated association, community chest, fund, or foundation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, shall not be employers subject to this article."

Appellant was organized as a corporation under a special act of the Legislature of the State of New York by Laws of 1908, chapter 280, having all the powers and subject to all the liabilities of a membership corporation organized under the Membership Corporations Law. The objects of the corporation as set forth in its charter are as follows: " § 2. The objects of the corporation shall be to adopt and enforce uniform rules regulating and governing dog shows and field trials, to regulate the conduct of persons interested in exhibiting, running,

breeding, registering, purchasing and selling dogs, to detect, prevent and punish frauds in connection therewith, to protect the interests of its members, to maintain and publish an official stud book and an official kennel gazette, and generally to do everything to advance the study, breeding, exhibiting, running and maintenance of the purity of thoroughbred dogs. And for these purposes it shall have power to adopt a constitution, by-laws, rules and regulations, and enforce the same by fines and penalties, which it shall have the right to collect and enforce by suit, or by suspension or expulsion from membership or by a suspension or denial of any or all of the privileges of said corporation. It may, from time to time, alter, modify or change such constitution, by-laws, rules or regulations.''

We have recently held that the right of a corporation to exemption under the statute involved here (*Matter of Mohawk Mills Assn., Inc.,* 260 App. Div. 433 and cases there cited) must be determined from its charter or the articles of incorporation. Unless all the purposes for which appellant was organized are exclusively scientific it is not entitled to exemption.

Appellant has no private shareholders or individual members and all its members are kennel clubs, most of which are unincorporated associations devoted to purposes allied to those of the main club.

Membership in the appellant while unlimited is restricted to clubs or associations which conduct a certain number of dog shows or field trials in consecutive years under appellant's rules or specialty clubs formed for the improvement of specific breeds of pure-bred dogs.

For more than thirty-five years appellant has been engaged in the compilation and distribution of statistics relating to the breeding of pure-bred dogs so that others may apply the laws of genetics in the breeding of dogs. During that period of time over 1,500,000 dogs, consisting of approximately 108 distinct breeds, have been registered with appellant for which service fees are charged.

Appellant has never conducted any dog shows or field trials, but licenses and supervises the same It also licenses the judges who select the prize winners at the bench shows and field trials which are annually licensed by it. It also issues certificates of ownership and change of ownership of dogs. It publishes a magazine and stud book, a book of dog standards, and also a complete monthly magazine carrying advertising matter with respect to dogs and dog specialties.

The data and records kept and maintained by appellant are supplied by the owners of the dogs when applying for the issuance of a pedigree certificate. This information consists of the name of the owner of the dog, the name of its dam and sire, its color and breed. The only records kept by appellant other than the names of the progenitors of the registered dogs are the markings and the date of whelping.

In the conduct of its affairs appellant has built up a large business, as its summary of operating income and expenses for the years 1937 to and including 1940 demonstrates. Its balance sheet for the year ending December 31, 1937, shows that appellant has investment assets consisting of deposits in savings accounts of $198,111.37; for 1938 — $202,095.42; for 1939 — $206,159.43 and for 1940 — $173,635.14. At the hearing before the Unemployment Insurance Appeal Board on April 22, 1942, appellant conceded that its surplus then was $160,000. These assets were derived from fees and other charges made by appellant in its corporate activities.

An examination of appellant's charter reveals that while some of its activities have a scientific aspect we are convinced that it was not organized exclusively for scientific purposes as that term is generally understood. It is not devoted to the sciences or to a department of science as a principal object.

Precedent and logic will not permit us to attach a scientific label to the principal objects for which appellant was created. Its charter authorizes it " to adopt and enforce uniform rules regulating and governing dog shows and field trials."; also " to regulate the conduct of persons interested in exhibiting, running, breeding, registering, purchasing and selling dogs, to detect, prevent and punish frauds in connection therewith "; also " to protect the interests of its members, to maintain and publish an official stud book and an official kennel gazette, and generally to do everything to advance the study, breeding, exhibiting, running and maintenance of the purity of thoroughbred dogs."

These purposes, while laudable, surely are not wholly scientific. Nowhere in appellant's charter is there any statement indicating that its objects are exclusively scientific. Science is not its only primary object and hence it is not entitled to enjoy immunity from the tax imposed.

The decision appealed from should be affirmed, with costs.

HILL, P. J. (dissenting). In deciding whether unemployment payroll taxes are to be paid by appellant, we are to determine whether its activities are scientific. The certificate

of incorporation indicates, as do the acts of appellant, that its purpose is to accumulate and systematize information and knowledge concerning dogs and their breeding. In so doing, it formulates rules concerning shows and contests and publishes a magazine. The certificate permits an interpretation that the rules which regulate the conduct of persons who engage in exhibiting, registering, selling and breeding dogs, and the holding of shows and field trials are all incidental to the last clause of the sentence " to do everything to advance the study, breeding, exhibiting, running and maintenance of the purity of thoroughbred dogs." Moneys received appear to be used in the scientific study of dogs and their breeding and the publication of the information gained. The surplus which appears on the balance sheet has decreased latterly.

The study of dogs, their training and breeding is scientific, and when not allied with the profit motive, is not subject to this tax. " It was in part a horse breeder, maintaining an experimental breeding station and a breeding bureau; and it is quite true that until relatively modern times such knowledge of heredity as we had was derived from those who bred domestic animals. It would be hard to deny the name of science to their lore." (*Jockey Club* v. *Helvering,* 76 F. 2d 597.) In *Matter of Mendelsohn* (262 App. Div. 605) the facts are more similar to those here presented than in *Matter of Mohawk Mills Assn., Inc.* (260 App. Div. 433). The proof here does not bring this case within the category of *Matter of Carroll* (263 App. Div. 204, revd. 288 N. Y. 447) where there were two corporations, one " siphoning " off the surplus of the other. Nothing is here shown indicating financial profit by any person or corporation.

I favor a reversal of the decision.

Brewster, Foster and Lawrence, JJ., concur with Heffernan, J.; Hill, P. J., dissents in an opinion.

Decision affirmed, with costs.