[L. A. No. 20612. In Bank. Aug. 18, 1950.]

SERRA RETREAT (a Nonprofit Corporation), Respondent,
v. COUNTY OF LOS ANGELES, Appellant.

Harold W. Kennedy, County Counsel, and Andrew O. Porter, Deputy County Counsel, for Appellant.

Joseph Scott and J. Howard Ziemann for Respondent.

SPENCE, J.—Plaintiff brought this action to recover certain taxes paid under protest for the tax year 1946-1947. The question to be determined is the tax status of that portion of plaintiff's building, a retreat house, used as living quarters for four priests and six lay-brothers who attend to the spiritual and temporal needs of laymen making the retreats. Plaintiff relies on the welfare tax exemption extended to "property used exclusively for religious . . . or charitable purposes." (Cal. Const., art. XIII, § 1c; Rev. & Tax. Code, § 214.) The trial

court sustained the exemption claim and overruled defendant's general demurrer to plaintiff's complaint. From the judgment accordingly entered in favor of plaintiff, defendant has appealed.

 This case presents a problem somewhat similar to that discussed in the opinion this day filed in six consolidated hospital cases, *Cedars of Lebanon Hospital* v. *County of Los Angeles,* L. A. No. 20610, *ante,* p. 729 [221 P.2d 31], relative to the welfare exemption of hospital property used for nurses' homes and the housing of other alleged essential personnel. The considerations there determinative that such property was "used exclusively for hospital purposes" within the concept of the welfare exemption likewise here prevail in support of plaintiff's claim to the exemption benefit. Thus it affirmatively appears from the allegations of plaintiff's complaint, which were admitted by the demurrer thereto, that use of the portion of the property for living accommodations for its priests and lay-brothers is a use for a facility which is incidental to and reasonably necessary for the accomplishment of religious and charitable purposes. The trial court therefore properly awarded to plaintiff the tax relief here sought.

As appears from the complaint plaintiff, Serra Retreat, is a California religious corporation organized, owned and operated exclusively for religious and charitable purposes, and not for profit; no part of its net earnings, if any there be, inures to the benefit of any person or individual. It has been duly exempted from federal and state income, corporation, franchise, gift, estate, inheritance, social security and unemployment insurance taxes, and it has qualified as an institution entitled to welfare exemption status under the laws of this state. (Rev. & Tax. Code, §§ 214, 251, 254, 254.5, and 259.5.) The property known as Serra Retreat consists of a single edifice—a retreat house—which is allegedly operated "for the sole and exclusive purpose of dispensing charity and providing a place of religious reflection to which all persons regardless of race, color or creed may come to spend time" in religious meditation and to make a "layman's religious retreat" for the purpose of gaining "spiritual benefits and improvement of character." A layman's retreat lasts for "fifty hours," during which time "religious exercises and instructions are conducted by the Franciscan Fathers" and for the entire period "it is required as part of the religious activity that all retreatants remain constantly on the property, without

radios, newspapers, telephone calls or visitors, and that they keep complete and absolute silence so as to be able to meditate upon the religious instructions and exercises without distraction or interruption." Retreats are regularly given over weekends as well as at various times during the week, and the retreat house is "open to the public at any and all times for use as a place of religious worship and meditation." No charge is made for the use of the retreat house or for the board and room received by anyone in connection therewith; rather as a religious institution, it "is supported entirely by voluntary, confidential offerings."

The retreat house consists of a two-story and basement building with housing accommodations for fifty-five lay retreatants, four Roman Catholic Franciscan priests, and six Franciscan lay-brothers; in addition to chapel, library, kitchen, dining-rooms, laundry and service quarters. It is further alleged that the presence of said priests and lay-brothers on the retreat property is "essential, indispensable and necessary" in carrying out the regular retreat schedule—in that (1) the "sermons, meditations and religious services are given and conducted by said priests alternately," who "live on [the retreat] property so as to participate in and prepare and be available for" the prescribed religious activities in ministering to "the spiritual needs of" the lay retreatants; and (2) all "cooking, housekeeping, laundry, garden and maintenance work in and around [the] retreat house" is done by said lay-brothers in caring for "the temporal needs of" the lay retreatants using the retreat facilities. Neither the priests nor the lay-brothers receive any "remuneration whatsoever for their services excepting board, room and maintenance," and all "work under a vow of poverty." It is further alleged that the retreat property as a whole has been "irrevocably dedicated to religious or charitable purposes." (Rev. & Tax. Code, § 214, subd. (6).)

Defendant has recognized plaintiff as a qualifying nonprofit religious institution under the welfare exemption law, but it has segregated plaintiff's property in making the tax levy thereon. Thus defendant granted the exemption on 78 per cent of the retreat house, designated as "open to the laymen"—"the chapel, library, dining-room, kitchen, laundry, service quarters and housing accommodations for 55 laymen"—and denied the exemption on the remaining 22 per cent of the building because "used as permanent housing"

for the aforesaid priests and lay-brothers, the retreat personnel. But such distinction does not comport with the design of the welfare exemption as analyzed in relation to the undisputed facts in this case.

■ As discussed in the opinion this day filed in the six consolidated hospital cases, *Cedars of Lebanon Hospital* v. *County of Los Angeles*, L. A. No. 20610, *ante*, p. 729 [221 P.2d 31], the rule of strict construction applies to the welfare exemption law and the institution seeking its benefit must clearly show that it comes within the terms thereof; but adherence to this rule does not require so rigid and narrow an interpretation of the exempting language as to defeat the apparent design of the lawmakers. In short, there must be a strict but reasonable construction of this law as applied to the particular facts at hand. To this point it would appear that the exemption of property "used exclusively for religious . . . or charitable purposes" should be held to include any property of the religious or charitable entity which is used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of religious or charitable purposes. The integrated activities as a whole must be examined in determining the tax status of property for the welfare exemption.

■ As support for its denial of the exemption on that portion of plaintiff's property used for housing the priests and lay-brothers, defendant calls attention to the fact that while there is some conflict of opinion, the weight of authority sustains the rule that a parsonage or rectory owned by a church society or religious body, and occupied as a residence by the pastor or corresponding church dignitary, is not exempt as property "used for religious purposes." (Anno: 13 A.L.R. 1196; 168 A.L.R. 1247.) The cases generally fall into these main categories: (1) those considering a differing law in that the exemption of church property was confined to "places of religious worship" or to "houses of public worship"; (2) those involving an express statutory limitation as to amount of exemption for parsonages and buildings of that character, which direct provision precluded consideration on the additional ground that they constituted property "used for religious purposes"; or (3) those where the determination rested upon an analysis of the particular facts affecting the exemption of the church property in question so as to show that the use of the property for the parsonage or similar building was not a use for a facility which was inci-

dental to and reasonably necessary for the accomplishment of the religious purposes of the church. The present case presents a different problem in that it does not concern an exemption provision in favor of churches, such as section 1½, article XIII, of the California Constitution. Thus our constitutional provision exempting churches from taxation limits the benefit to ''buildings . . . used solely and exclusively for religious worship,'' while the later enacted welfare exemption law is described as ''in addition to such [church] exemption'' (Cal. Const., art. XIII, § 1c) and so, in evidence of a broader concept, refers to property ''used exclusively for religious purposes.'' *Ibid*; Rev. & Tax. Code, § 214.)

But the determinative factor here sustaining the propriety of the welfare tax exemption is the alleged institutional necessity for the provision of living quarters on the retreat property for the essential personnel. So significant are the allegations in the complaint that the ''presence on [plaintiff's] property of [the] priests and lay-brothers is essential, indispensable and necessary to the conduct and operation of [the] religious and charitable activities of [the] Serra Retreat,'' and that their living on said property is ''essential and necessary'' to the ''spiritual'' and ''temporal needs,'' respectively, of ''the laymen using the facilities of said institution.'' These allegations are admitted by defendant's demurrer to the complaint, and the conclusion is inescapable that the portion of plaintiff's building used to furnish housing accommodations for the essential retreat personnel is properly classifiable as property ''used exclusively for religious purposes.'' As so viewed, plaintiff's provision of living quarters for its needed retreat personnel as an institutional necessity—a facility incidental to and reasonably necessary for the accomplishment of its religious and charitable purposes—is wholly distinguishable from the parsonage cases where the provision of housing for the pastor or minister on church property does not stem from claims of institutional necessity as contrasted with mere considerations of residential convenience. It therefore follows that the trial court properly concluded that *all* of plaintiff's retreat house was entitled to the welfare exemption, and correctly overruled defendant's general demurrer to plaintiff's complaint.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.