The EVANGELICAL COVENANT CHURCH OF AMERICA, an Illinois Corporation, and Arctic Broadcasting Association, an Illinois Corporation, Appellants,

v.

CITY OF NOME, an Alaska Municipal Corporation, Appellee.

No. 457.

Supreme Court of Alaska.

Aug. 24, 1964.

Eben H. Lewis, of Robison, McCaskey & Lewis, Anchorage, for appellants.

Thomas J. Balone, Nome, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This is an appeal by the Evangelical Covenant Church of America, hereinafter designated "Covenant Church," and its subsidiary Arctic Broadcasting Association, hereinafter referred to as "Arctic," from a judgment of the superior court in effect denying them exemption from certain ad valorem and sales taxes imposed by the appellee, the City of Nome. Both appellants are Illinois corporations, operating at Nome, Alaska.

Covenant Church, as plaintiff below, filed a complaint in the superior court against the City of Nome for the recovery of taxes paid under protest in 1959 and 1960, and to be paid for 1961, on certain lands and the buildings and equipment thereon, consisting of Radio Station KICY leased to Arctic, and the residences of the station manager, the station engineer, the missionary builder and the associate or lay pastor. The city answered denying the entitlement of Covenant Church to any tax exemptions and counterclaiming for consumer sales

taxes alleged to be due and owing to the city on all radio time sold by Arctic. Covenant Church denied any obligation to pay the sales tax. By stipulation Arctic was brought into the case as a party plaintiff.

There are three issues raised on appeal, the first of which may be phrased as follows: May a city in Alaska, under its taxing powers, lawfully assess and collect ad valorem taxes upon the property and facilities of a radio station established and operated under the missionary function of a church, where the station is actively engaged in the sale of commercial radio time and the profits therefrom are used to pay the cost of operating the station and to help support the missionary activities of the church?

Article IX, section 4 of the Alaska Constitution provides in part that

"All, or any portion of, property used exclusively for non-profit religious * * * purposes, as defined by law, shall be exempt from taxation. Other exemptions of like or different kind may be granted by general law. * * *"

Subsection (a) of AS 29.10.336 [1] authorizes city councils to "assess, levy, and collect a general tax for school and city purposes not to exceed three per cent of the assessed valuation upon all real and personal property * * *." Subsection (b) reiterates the constitutional provision above quoted by declaring that "all property used exclusively for religious * * * purposes" is exempt from taxation, and subsection (c) defines the term "property used for religious purposes" as including "the residence of the pastor, priest, or minister of a religious organization, *and other property of the organization not used for business, rent, or profit*." [Emphasis added.] Subsection (d) declares that "if a religious * * * organization * * * derives rentals or profits from its property, that property is not exempt."

Covenant Church admits that Arctic, through radio station KICY sells "commercial time" [2] but claims that Arctic is not organized as a profit-making enterprise and that fees are charged for its service only to alleviate the burden that otherwise would fall on contributors to the missionary (religious) activities of Covenant Church.

There seems to be no court decisions dealing with the tax exempt status of church operated radio stations; however, there are cases bearing upon the question of tax exemption of property used by beneficent institutions in the publication or sale of literature, which we consider to be analogous and helpful. In reference to the decisions in this latter field, there is an annotation in 154 A.L.R. which states:

"[I]t has been held in a great majority of jurisdictions that a beneficent institution is not entitled to an exemption from taxation on its property used in the commercial business of publishing or selling literature even though the funds derived in this manner are exclusively devoted to beneficial purposes, but that such property will be considered as tax exempt if the publication or the sale of literature is the direct and primary purpose of the beneficent institution." [3]

Illustrative of the majority view as above stated is the decision in a recent Oregon

1. Prior to 1962 the substance of AS 29.-10.336 was contained in subsection Ninth of section 16–1–35, ACLA 1949, amended as follows: SLA 1949, ch. 38, § 1, SLA 1951, ch. 47, § 1; SLA 1953, ch. 118, § 1; SLA 1953, ch. 121, § 1, SLA 1957, ch. 109, § 1.

2. Included in the "Stipulation of Facts" of the parties is a statement filed with the Federal Communications Commission which shows that only 22.4% of KICY's radio time is used for broad- casting religious material. The trial court found that KICY derived about one-half of its income from the sale of commercial time. While KICY is licensed by FCC as a "commercial station," we attach no significance to that fact for the parties inform us that FCC issues no license for non-commercial radio except in the FM (very high frequency) band.

3. Annot., 154 A.L.R. 895, 898 (1945).

case, Multnomah School of the Bible v. Multnomah County.[4] The Bible School was a nonprofit, nondenominational institution. It made no tuition charges and afforded opportunities for a general liberal arts education, but emphasizing the study of the Bible, with preparation qualifying its graduates for missionary work and other forms of religious activity. It operated an off-campus bookstore, known as the Christian Supply Center, in one of the largest retail districts of the City of Portland. The stock of merchandise in the bookstore consisted in the main of Sunday School supplies, Bibles of various styles, missionary film strips, moving pictures, picture projection machines, religious records and miscellaneous novelties with a religious flavor. While the store catered to missionaries and Sunday School teachers, without regard to denomination, its merchandise was sold to any member of the public interested in buying.

By statute in Oregon the property of literary, benevolent, charitable and scientific institutions is exempt from taxation but only insofar as it "is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."[5] Another Oregon statute declared that nonprofit corporations, such as the Bible School was, might be created for any lawful purpose "so long as they do not engage in any form of trade or commerce, *or carry on any activity which will result in a remunerative profit to them* or any of their members." [Emphasis added.][6] The school sought to avoid the impact of the statute by representing that all profits from the bookstore were immediately channeled back into the treasury of the school, where it was employed for the purposes for which the school was organized. The court, however, refused to recognize such a basis for tax exemption, stating:

> "We hold plaintiff's business, known as the Christian Supply Center, is an enterprise for the purpose of business and profit which comes in direct competition with businesses of like nature and kind carried on elsewhere by other persons and does not comply with ORS 307.130, supra, so as to entitle it to the tax relief sought, even though its net gains flow to and are devoted by the Bible School to religion or education."[7]

Similarly in Hilger v. Harding College, Inc.,[8] the Supreme Court of Arkansas held that under a state constitutional provision authorizing exemption from taxation of school buildings and apparatus and grounds used exclusively for school purposes, the printing press of Harding College was not exempt from taxation. Although the operation of the printing press was authorized by the articles of incorporation and the press provided jobs for students and immediate, accurate service for college printing, the court ruled that the printing press was not being used exclusively for school purposes since ten percent of the printing work was not done for the college.[9]

A few jurisdictions have adopted a contrary view, holding that it is the use of the income derived that determines whether the institution is entitled to tax exemption.[10]

---

4. 218 Or. 19, 343 P.2d 893 (1959).

5. ORS 307.130, as amended.

6. ORS 61.010, repealed in 1959.

7. Multnomah School of the Bible v. Multnomah County, 218 Or. 19, 343 P.2d 893, 904 (1959). Compare Board of Equalization v. Tulsa Pythian Benev. Ass'n, 195 Okl. 458, 158 P.2d 904, 906 (1945).

8. 231 Ark. 686, 331 S.W.2d 851 (1960).

9. Id. 331 S.W.2d at 857. In this case the court went on to say: "We recognize that a casual or incidental outside usage might not always be inconsistent with the constitutional requirement of exclusiveness but we are unwilling to say that the outside work in this instance was casual or incidental. * * * If we now arbitrarily hold that 10% is incidental and inconsequential and that it does not violate the constitutional injunction of exclusiveness, then we would open a Pandora box of borderline questions to plague the courts in the future. * * * "

10. City of Louisville v. Presbyterian Orphans Home Soc., 299 Ky. 566, 186

We think the rule followed by the majority is the better one and we, therefore, hold in this case that the property and facilities of radio station KICY are subject to the ad valorem tax since they are not used exclusively for religious purposes. It matters not that only a part of the radio time was sold and used for commercial purposes [11] and that the profits derived from the sale of commercial radio time were used to further the missionary work of Covenant Church. For us to hold otherwise would result in a taxed commercial business being forced to compete with the commercial activities of institutions claiming a tax exempt status under the law.

■ The next issue to consider is whether a city may lawfully assess and collect taxes on the residence furnished by a church to its assistant or lay pastor.

The head pastor of Covenant Church at Nome is a Mr. Amundson who serves mainly the White population. He is assisted by an associate or lay pastor, Mr. Savok, who is an Eskimo and ministers to the needs of the people of his own race. The parties have stipulated that both of these men are ordained, licensed preachers of Covenant Church, the only distinction between them being "that the Reverend Amundson has attended and graduated from a Theological Institution." Mr. Savok is paid a small stipend and furnished a residence. As appellants point out, the dispute between the parties is not whether Mr. Savok is a bona fide minister, but whether a church is legally entitled to tax exemption for more than one parsonage.

Alaska has no express constitutional provision on parsonage exemption;[12] however, article IX, section 4 of the Alaska Constitution provides for exemptions in the case of property used exclusively for religious purposes, and then adds that "other exemptions of like or different kind may be granted by general law." Additionally our legislature, under the constitutional power granted it to do so,[13] has defined the term "used for religious purposes" as including "the residence of the pastor, priest, or minister of a religious organization, *and other property of the organization not used for business, rent, or profit.*"[14] [Emphasis added.] We hold that under these broadened tax exemption provisions of our constitution and AS 29.10.336, the parsonage of the assistant or lay pastor, Mr. Savok, is exempt

S.W.2d 194 (1945), holding that it is enough to entitle an orphanage to tax exemption on its income-producing property if the institution is one of purely public charity and its income is devoted solely to education; Book Agents of the Methodist Episcopal Church, South v. Hinton, 92 Tenn. 188, 21 S.W. 321, 19 L.R.A. 289 (1893), granting tax exemption to a corporation organized as a branch of a church for the purpose of operating a publishing house and devoting its net income, about one fifty-sixth of which was derived from the printing of secular books, handbills, letterheads, etc., to the support of superannuated ministers.

11. Supra note 2.

12. Annot., 13 A.L.R. 1196 points out, at 1197–1202, and the trial court determined that, without some language in the constitution or the statute specifically exempting parsonages as such from taxation, they are not exempted by language referring generally to property used for religious purposes.

13. As earlier noted in the opinion, one provision of article IX, section 4 of the constitution provides that "all, or any portion of, property used exclusively for non-profit religious * * * purposes, *as defined by law,* shall be exempt from taxation." [Emphasis added.]

14. AS 29.10.336(c). While this subsection of the statute omits the word "exclusively" from the term "property used for religious purposes," it is quite evident that the legislature was referring to the term "property used exclusively for religious * * * purposes" as it appears in the preceding subsection (b) of the statute and ties in with the constitutional expression "property used exclusively for non-profit religious * * * purposes, as defined by law." We mention this fact simply because the City of Nome contends that AS 29.10.-336(c) is merely an attempt to define religious use, not exclusive religious use, and, therefore, is ambiguous and not controlling.

from the ad valorem tax sought to be imposed by the City of Nome.[15]

■ The final issue to be determined in this case grows out of Covenant Church's charge that the trial court erred in holding, with respect to the city's counterclaim, that KICY's broadcasts are intrastate, not interstate, in character and that the City of Nome may, therefore, impose a sales tax on the sales of commercial time by the radio station.[16]

We do not deem it necessary to decide whether any of the broadcasting activities of radio station KICY reached beyond the boundaries of the State of Alaska and became transactions in interstate commerce, the regulation of which is reserved to Congress [17] for even if they did, that fact alone would not constitute any legal obstacle to the imposition of the sales tax by the City of Nome upon the sales of radio time by KICY. The Supreme Court of the United States has made it clear that a sales tax levied by a state upon transactions in interstate commerce is valid even though the cost of doing interstate commerce is thereby increased. Only if the tax has a tendency to prohibit interstate commerce or to place it at a disadvantage as compared or in competition with intrastate commerce, or to discriminate against interstate commerce can the tax be said to be unconstitutional. This was first spelled out by the Court in the famous case of McGoldrick v. Berwind White Coal Mining Co.,[18] wherein a New York City sales tax on coal mined in Pennsylvania and shipped into the city and there sold for consumption was upheld. In Mc-

Goldrick as in the instant case there was no discrimination against, or imposition of any unconstitutional burden upon, interstate commerce, and the seller and the services rendered were both within the city (or state) doing the taxing. We find no reversible error chargeable to the trial court as pertaining to this last issue presented.

For the reasons stated in this opinion the judgment entered below is affirmed except that it is reversed insofar as it upholds the ad valorem tax assessed and collected by the City of Nome on the residence occupied by the lay pastor, Mr. Savok. As to the portion of the judgment reversed, the case is remanded to the superior court with directions to proceed in conformity with this opinion.

So ordered.

---

15. The appellee cites us to a 1916 case, Griswold v. Quinn, 97 Kan. 611, 156 P. 761 (1916), in which the court stated: "The almost universal rule is that each church congregation has but one pastor." We doubt whether such a rule can be said to have any place in this day and age when many a church congregation is ministered to by more than one pastor.

16. Covenant Church alleges that the trial court's error resulted from the failure of the Nome city ordinance to distinguish between services performed by and for residents within the city, on the one hand, and sponsors outside the city but

within the state, on the other, as well as sponsors outside the State of Alaska entirely. Such a tax ordinance and consequent tax assessment, Covenant Church claims, "contravenes between the limit of taxing powers of municipal corporations and the Commerce Clause of the United States Constitution."

17. Article I, Section 8 of the Constitution declares that "Congress shall have Power * * * to regulate Commerce with foreign Nations, and among the several States."

