Lee HARMON, Glenn McKee and Greater Anchorage Area Borough, Appellants,

v.

NORTH PACIFIC UNION CONFERENCE ASSOCIATION OF SEVENTH DAY ADVENTISTS, Appellee.

No. 1060.

Supreme Court of Alaska.

Dec. 15, 1969.

---

1. Otis Elevator Co. v. McLaney, 406 P.2d 7, 9–10 (Alaska 1965).

Warren W. Matthews, Jr., and Charles P. Flynn, of Burr, Pease & Kurtz, Anchorage, for appellants.

William J. Bailey, of Croft & Bailey, Anchorage, for appellee.

Allen McGrath, of McGrath & Wohlforth, Anchorage, for National Board of Missions of the United Methodist Church, Alaska Mission, as amicus curiae.

Before DIMOND, RABINOWITZ and CONNOR, JJ., and MOODY, Superior Court Judge.

CONNOR, Justice.

This case concerns the scope of an exemption of real property from taxation. Under constitutional and statutory provisions which render certain property used for religious purposes exempt from taxation, appellee claims exemption from taxes assessed by the Greater Anchorage Area Borough.[1] The borough asserts that the property is not exempt from taxation.

Appellants assessed real property taxes for the calendar year 1965 on three parcels of residential property owned by the appellee. These will be referred to as follows:

*Parcel 1*

702 Barrow Street—residence of A. C. Reed. Mr. Reed is a minister of the Seventh Day Adventist Church. He is the assistant to J. C. Hanson, and is also the treasurer of appellee's statewide operations.

*Parcel 2*

134 East Seventh Avenue—residence of David Kuebler. Mr. Kuebler is not a minister of the church, and his position is that of principal of appellee's parochial school and teacher in the 9th and 10th grades.

*Parcel 3*

111 East Seventh Avenue—residence of J. C. Hanson. Mr. Hanson is the president of appellee's statewide operations, and is also a minister in appellee church.

Parcels 1 and 2 are located in close proximity to appellee's Alaska Mission. Parcel 3 is located next to the church building of appellee. All of the parcels are located within the same block in Anchorage, Alaska.

---

1. While in Walz v. Tax Comm. of the City of New York, 395 U.S. 957, 89 S.Ct. 2105, 23 L.Ed.2d 744, the United States Supreme Court has granted review to determine the constitutional validity of religious property tax exemptions, that question is not raised in the briefs and, therefore, is not before us.

In addition to being used as residences, it is stated that the dwellings on these parcels of property are used for counseling, social gatherings of a church nature, and as residences by visiting members and staff of the church when they attend conferences at Anchorage.

It is the policy of appellee to provide housing for all of its employees in Alaska, whether or not it designates them as ministers. For example, one of the secretaries of appellee occupies an apartment contained in the residence of Mr. Hanson on Parcel 3.

Appellee's statewide operations are extensive. It operates ten schools in the State of Alaska, only one of these being within the Greater Anchorage Area Borough. It operates nine organized churches and five organized church companies. None of the organized companies is in the Greater Anchorage Area Borough, and only one of the organized churches is within the borough. Neither the physical church building located in the Greater Anchorage Area Borough nor the home of the pastor of the local congregation is taxed by the borough.

The assessments were appealed by the appellee to the board of equalization of the borough. This appeal was denied by the board on April 5, 1965; and on May 17, 1965, appellee brought an action for a declaratory judgment asserting that these properties were exempt from taxation.

Appellants moved to dismiss on the grounds that appellee had not appealed to the superior court under AS 29.10.426, providing for appeals from the determinations of boards of equalization, and that appellee should not be allowed to collaterally attack the decision of the board. This motion was denied, without opinion. Both parties then filed cross motions for summary judgment and stipulated on this method of disposing of the case. Summary judgment was granted to appellee church, declaring the properties in question to be exempt from real property taxation.

The two main issues presented on appeal are: (1) whether the bringing of a declaratory judgment action instead of following the statutory method of appeal from a tax equalization board determination should bar appellee from litigating its claimed tax exemption, and (2) whether the properties in question are exempt from taxation.

## THE PROCEDURAL ISSUE

Appellants argue that the exclusive method of review of the equalization board's determination is that found in AS 29.10.426, which provides:

"A person aggrieved by an order of the board of equalization may appeal to the superior court for review de novo after he has exhausted his administrative remedy under §§ 369–540 of this chapter."

Both parties concede that this type of appeal was not sought, that the action before us was an original action when filed, and that the right of appeal from a board of equalization determination differs in certain cases from the right to commence an independent action.

In Keiner v. City of Anchorage, 378 P. 2d 406 (Alaska 1963), this court laid down the rule that on appeal from administrative agencies or district (then magistrate) courts there may not be a trial de novo unless the superior court requires it. This rule was based upon an interpretation of legislative enactments subsequent to Alaska statehood and a procedural rule promulgated by this court. The court stated:

"[I]f the agency record is not sufficient to determine the issue on appeal, or if the record discloses that justice requires evidence to be taken de novo, the superior court has the discretion to do what is necessary by granting a new trial or hearing, either in whole or in part." Keiner v. City of Anchorage, supra, at 410.

Appellants argue that the review of the board of equalization's determination should have been on the record, including a transcript of the board hearing and any other documents which might have been available. Appellants argue that only if the record

were inadequate, or if the superior court in its discretion granted a de novo hearing, should the review have been de novo and not limited only to the record. It is argued that unless the rule laid down in *Keiner* is enforced, it means a reversion to the system by which all review of administrative action would be de novo. Additionally, appellants argue that the substantial evidence rule will be overturned if an independent action such as the one before us is permitted.

It is true that the substantial evidence rule is of great importance. One of the purposes of administrative agencies is to serve as fact-finding boards in fields in which they possess expertise greater than, or at least equal to, that of the judiciary. The litigation of various questions before administrative tribunals, which are vested with power to act within a given field, also results in judicial economy, as many administrative determinations are final and are not appealed by either party. Running through the entire field of administrative law is the policy of not overturning the factual findings of administrative agencies unless there is a lack of substantial evidence in the record as a whole to sustain the agencies' determinations. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Appellee argues that whatever may be the general rule, in the case before us the standard of review was the same because there were no genuine factual issues in dispute. It urges that the only point at issue is whether, under agreed facts, the residential properties in question are taxable as a matter of law. Appellee argues that even if it had followed the prescribed procedure, only this question would have been presented for consideration by the superior court. It also points out that if this action were to be dismissed on procedural grounds it would only result in the same questions being brought before the court at some later date, with essentially the same facts, the same legal issues, and with additional expense to all parties.

In Matanuska-Susitna Borough v. King's Lake Camp, 439 P.2d 441 (Alaska 1968), the borough contended that the appellee had incorrectly instituted an action for both declaratory and injunctive relief instead of paying its taxes under protest and suing for recovery, and that appellee had not obtained a ruling from the board of equalization, thereby failing to exhaust its administrative remedy. This court in that case stated its opinion that the procedural questions presented should await a more appropriate occasion for their resolution. We feel similarly in the case before us. Appellee's only procedural irregularity was in terming its action before the superior court an original action for declaratory relief instead of an appeal from an adverse ruling of the board of equalization. Unlike the *King's Lake Camp* case, appellee here did in fact apply for relief from the board of equalization before seeking relief in the courts.

It is noteworthy that the superior court indicated its willingness to make a determination on the merits when it denied appellants' motion to dismiss for failure to state a claim. This can be regarded as an exercise of the court's discretion to hear the matter de novo on appeal from the board of equalization. We have already noted that the facts in this case were not seriously in dispute.

 Considering all of these circumstances, we have concluded that any procedural irregularities committed by appellee should not bar it from a determination on the merits.

## THE SUBSTANTIVE ISSUE

The pertinent parts of the statute which we must construe, AS 29.10.336, read as follows:

"(a) Property * * * used exclusively for nonprofit religious * * * purposes * * * [is] exempt from [property] taxation.

(b) The term 'property used exclusively for religious purposes' includes the

following types of property owned by a religious organization:

(1) the residence of the pastor, priest, rabbi, minister, or religious order, which residence is owned by a recognized religious organization;

(2) a structure, and the land it stands on, which is used for public worship, solely charitable purposes, religious education, or a nonprofit hospital;

(3) the furniture and fixtures in a structure used exclusively for religious purposes;

(4) lots adjacent to a structure or residence mentioned in (1) or (2) of this subsection, and which are reasonably necessary to the convenient use of the structure;

(5) lots required by local ordinance for parking in connection with the structure as defined in (2) of this subsection.

(c) Property or part of the property described in (a) or (b) of this section from which rentals or income are derived is not exempt from taxation under (a) of this section, unless the rentals or income are derived from the rental of the property by religious or educational groups for classroom space."

This statute was enacted pursuant to Article IX, Section 4, of the Constitution of the State of Alaska, which reads in part:

"All, or any portion of, property used exclusively for nonprofit religious, charitable, cemetery, or educational purposes, as defined by law, shall be exempt from taxation. Other exemptions of like or different kind may be granted by general law."

While this court in Evangelical Covenant Church of America v. City of Nome, 394 P.2d 882 (Alaska 1964), held that more than one parsonage exemption could attach to a given church, and referred to "these broadened tax exemption provisions," 394 P.2d, at 885, as a basis for that holding, it should be noted that the statute has been repealed and re-enacted since this court rendered that decision.[2]

We view the action of the legislature in deleting the language "and other property of the organization not used for business, rent, or profit," as narrowing the type of residence which can be exempt from property taxation under AS 29.10.336(b) (1), as it now reads.

Appellants argue that we should apply the almost universally accepted canon of construction that taxing statutes should be construed in favor of the taxing authority and that exceptions to general tax provisions should be narrowly construed. More particularly, they point to cases in which tax exemptions for property used in religious and educational activities are construed narrowly, or where the property is treated as being exempt only if it falls within the plain meaning of the statute. As the court observed in Cedars of Lebanon Hospital v. Los Angeles County, 35 Cal.2d 729, 221 P.2d 31, 15 A.L.R.2d 1045 (Cal. 1950),

"Constitutional provisions and statutes granting exemption from taxation are strictly construed to the end that such concession will be neither enlarged nor extended beyond the plain meaning of the language employed. * * * In this regard, it is immaterial that the institutions in question may contribute to the public welfare and serve the interests of the state, for they, like other private owners of property, have the burden of

---

2. The portion of the statute passed upon in Evangelical Covenant Church v. City of Nome, supra, reads as follows: "(c) The term 'property used for religious purposes' includes the residence of the pastor, priest, or minister of a religious

organization, *and other property of the organization not used for business, rent, or profit.*" The italicized language was deleted in the repeal and re-enactment of the statute in 1964. SLA 1964, ch. 34, § 2.

showing that they clearly come within the terms of the exemption." 221 P.2d, at 34.

A number of cases hold that under statutes similar to our own the residences of church administrators and teachers do not qualify for property tax exemption.

In International Missions, Inc. v. Borough of Lincoln Park, 87 N.J.Super. 170, 208 A.2d 431 (1965), it was held that the residence of a clergyman who functioned as an officer of an international missionary corporation was not exempt as property actually and exclusively used for religious purposes, or as a parsonage of an officiating clergyman of a religious corporation, as required by the applicable statute. The court stressed that the person occupying an exempt residence must possess some degree of permanency and must be serving the needs of a reasonably localized and established congregation. Partly because the clergyman in question was primarily an administrative officer and not a pastor or minister of a particular parish, church, or congregation, his dwelling was held not to be exempt.

In Township of Teaneck v. Lutheran Bible Institute, 20 N.J. 86, 118 A.2d 809 (1955), the court denied an exemption to homes provided by a bible institute for faculty members and their families. The fact that the faculty members maintained studies and offices in these homes so that students could seek counseling and guidance was of no avail. The homes failed to fulfill the statutory criterion that the " 'buildings [be] actually and exclusively used in the work of associations and corporations organized exclusively * * * for religious * * * purposes.' " In so ruling, the court emphasized the rule of construction that all doubts are resolved against those seeking the benefit of a statutory exemption from taxation.

Similarly, in St. John Evangelical Lutheran Congregation v. Board of Appeals, 357 Ill. 69, 191 N.E. 282 (1934), the court held taxable the residence owned by a church and occupied free of rent by a teacher who sometimes tutored pupils in the residence, under a statute granting an exemption to property used "exclusively for school and religious purposes."

Worcester District Stewards New England Conference of Methodist Episcopal Church v. Assessors of Worcester, 321 Mass. 482, 73 N.E.2d 898 (1947), holds taxable a dwelling of a minister who was an administrative supervisor over a number of churches within a district, but who was not the incumbent minister of any particular church or congregation.

Even when the uses of a piece of property are highly related to the primarily exempted activity, the exemption will not apply when the statute requires "exclusive" use. In Sisterhood of Holy Nativity v. Tax Assessors, 73 R.I. 445, 57 A.2d 184 (1948), the statute exempted "buildings for free public schools, buildings for religious worship and the land on which they stand" insofar as they were occupied and used exclusively for religious or educational purposes. In that case a building used as a residence by sisters who conducted retreats for women, conferences of a religious nature, and who instructed children of the local parish church, was held subject to taxation. The court noted that the building was devoted to both secular and exempted uses. Under the canon of strict construction the court found that the exemption failed. Even though there was a high degree of religious use, the court found it not exclusively religious in nature.

Appellee argues that the rule of interpretation should focus upon whether the property is reasonably necessary for the efficient functioning of the organization claiming the exemption. Appellee points out that there is a respectable group of cases in which courts have declared that properties reasonably and incidentally necessary to the function of the exempted activity are to be included within the tax exemption. We have examined these cases and find that they are largely distinguishable either on the facts or on the statutory

language which they apply. Some of these cases are highly persuasive, and they employ sound judicial technique, but we do not find them sufficient to overcome the precise terminology of our own statute or the more general policy of strict construction in interpreting tax exemptive laws.

Appellee cites Cedars of Lebanon Hospital v. Los Angeles County, supra, which has already been discussed earlier in this opinion. We find this case distinguishable on its facts and on the statutory language. In that case the court found an institutional necessity to provide living quarters for resident doctors and other members of the hospital staff. The statutory terminology was different from what we must here construe.

Serra Retreat v. Los Angeles County, 35 Cal.2d 755, 221 P.2d 59 (1950), held that a portion of a retreat house used as living quarters for priests and lay brothers was exempt from taxation. This case is also distinguishable on its facts and on the statutory language applied. The court there found that it was vitally necessary that the priests and lay brothers live within the retreat house in order to perform their religious functions. The actual dispute in that case was over less than one-quarter of the structure, the remaining part of the structure being admittedly exempt.

Elder v. Trustees of Atlanta University, 194 Ga. 716, 22 S.E.2d 515, 143 A.L.R. 268 (1941), exempted faculty dwelling houses owned by a college and located across the street from the main campus. The statute there construed exempted all buildings "used as a college." 22 S.E.2d, at 519. Thus it was unlike the Alaska provision which we interpret in the case before us.

Appellee cites Nebraska Conference Association of Seventh Day Adventists v. Board of Equalization, 179 Neb. 326, 138 N.W.2d 455 (Neb.1965), which exempted faculty houses, located adjacent to academic grounds on tax exempt land owned by a religious association. That case also exempted faculty houses located one-half mile from the academic grounds and oc-cupied by faculty members. However, the school was a rural boarding school, and it was required that faculty members live on or near the campus in order to maintain the constant supervision, instruction, and counseling of students which was necessary to the functioning of the educational institution itself.

The argument presented by amicus curiae stresses heavily the point that the Alaska statute is not merely a "parsonage exemption." It is urged that the many cases which interpret a "parsonage" exemption narrowly have no bearing upon the Alaska statute, which is phrased in terms of exempting "the residence of the pastor, priest, rabbi, minister, or religious order."

As amicus curiae points out, many of the cases which are restrictive about the scope of religious tax exemptions deal with statutory language which refers to the term "parsonage" as the specific category of exemption. But there are many aspects which must be considered in interpreting these statutes other than the accidental presence or absence of the term "parsonage" as opposed to some other word.

To us the term "parsonage" is a fair equivalent for the term "residence" of a pastor, minister, rabbi, priest, or religious order, referring to a religious congregation having an identifiable, local situs.

The term "parsonage" originally had an ecclesiastical meaning, referring to a benefice of land, or of a house, belonging to a parish and appropriated to the maintenance of an incumbent or settled pastor of a church. In its modern signification it simply refers to the residence of a parson attached to a local church or congregation. In re Wells Estate, 63 Vt. 116, 21 A. 270 (1891). St. Joseph's Church v. City of Detroit, 189 Mich. 408, 155 N.W. 588 (1915).

Some authorities have treated a parsonage as being different in nature from the church to which it relates, viewing a parsonage as property which is a non-spiritual means of aiding worship in the church proper. Although it is ordinarily used as a residence for the pastor, there is nothing to

prevent a parsonage from being used for other purposes, including profit. Everett v. Trustees of First Presbyterian Church, 53 N.J.Eq. 500, 32 A. 747 (1895).

We fail to perceive a meaningful difference between the notion of "parsonage" and "residence" of the spiritual leader of a local religious congregation. If it were not for the particular exemption provisions of the Alaska statute, one could even argue that parsonages are not to be exempted, following the narrow · distinctions drawn in some of the cases cited above.

■ The crux of the problem before us is that we are confronted with a legislative determination, within its apparent constitutional powers, that in the category of property used exclusively for religious purposes there shall be included "the residence of the pastor, priest, rabbi, minister, or religious order." This language is noteworthy for its use of the term "the" in its specific enunciation. Thus, though it might be argued under cases decided in other jurisdictions that even the residence of a minister who is attached to a particular church or congregation should not be exempt, for the reason that it is devoted partly to other than exclusively religious uses, the legislature has made a determination that such a residence shall be exempt. But it has said no more than this. To us the words *"the* residence of *the* pastor," etc., imply that only those residences may qualify that have some direct relationship to a structure used primarily as a house of worship.[3] If the legislature desires a broader form of exemption, it may amend the statute. Under the policy of strict construction of such statutes we cannot, under the existing statutory language, extend the statute to cover those objects not plainly within its meaning.

Under the approach we have employed it is clear that Parcel 2, the residence of Mr. Kuebler, who is not a minister but a teacher in appellee's parochial school, is subject to taxation. It is likewise clear that Parcels 1 and 3 are subject to taxation. Parcel 1 is the residence of A. C. Reed, who, although a minister of the church, is an assistant to J. C. Hanson and is treasurer of appellee's statewide operations. Parcel 3, the residence of J. C. Hanson, who is president of appellee's statewide operations, and who is also a minister, is similarly subject to taxation.

The judgment below is reversed with directions to enter summary judgment in favor of appellants.

NESBETT, C. J., not participating.

RABINOWITZ, Justice (concurring in part and dissenting in part).

I find I am in agreement with the majority's conclusion that appellee's institution of a declaratory judgment action instead of following the procedures prescribed by statute for appeals from a decision of the board of equalization should not bar appellee from litigating its tax exemption claims. On the other hand, I cannot agree with the court's holding that the three residences in question are each subject to taxation.

I think undue weight has been accorded to the well established canon of statutory construction which requires tax exemptions to be strictly construed. Seemingly ignored is a subsidiary principle to this rule of strict construction. For it is established that a strict construction must also be a reasonable construction. This latter principle finds illustration in Cedars of Lebanon

---

3. We need not decide in this case whether Evangelical Covenant Church of America v. City of Nome, 394 P.2d 882 (Alaska 1964), has been altered legislatively so that only a single parsonage can obtain exemption in connection with any one organized, local congregation or church structure. Nor do we otherwise, than in the case before us, determine the extent of change in the religious tax exemption which results from the repeal and re-enactment of the statute in 1964.

Hospital v. Los Angeles County[1] where it was said:

> But the rule of strict construction does not require that the narrowest possible meaning be given to words descriptive of the exemption, for a fair and reasonable interpretation must be made of all laws, with due regard for the ordinary acceptation of the language employed and the object sought to be accomplished thereby.[2]

In my view, a reasonable construction of AS 29.10.336 leads to the conclusion that the Reed, Hanson, and Kuebler residences are exempt from taxation.

Alaska's Constitution provides in part that:

> All, or any portion of, property used exclusively for non-profit religious, charitable, cemetery, or educational purposes, as defined by law, shall be exempt from taxation.[3]

Pursuant to this article of Alaska's Constitution, the legislature enacted AS 29.-10.336, which states in part:

> (a) Property * * * used exclusively for nonprofit religious * * * purposes * * * [is] exempt from [property] taxation.
>
> (b) The term "property used exclusively for religious purposes" includes the following types of property owned by a religious organization:
>
> (1) the residence of the pastor, priest, rabbi, minister, or religious order, which residence is owned by a recognized religious organization;
>
> (2) a structure, and the land it stands on, which is used for public worship, solely charitable purposes, religious education, or a nonprofit hospital;
>
> (3) the furniture and fixtures in a structure used exclusively for religious purposes;

> (4) lots adjacent to a structure or residence mentioned in (1) or (2) of this subsection, and which are reasonably necessary to the convenient use of the structure;
>
> (5) lots required by local ordinance for parking in connection with the structure as defined in (2) of this subsection.
>
> (c) Property or part of the property described in (a) or (b) of this section from which rentals or income are derived is not exempt from taxation under (a) of this section, unless the rentals or income are derived from the rental of the property by religious or educational groups for classroom space.

I do not believe it reasonable to read these provisions more narrowly than their predecessor. Prior to the 1964 amendments, AS 29.10.336(c), then the only section on religious exemption, read:

> The term "property used for religious purposes" includes the residence of the pastor, priest, or minister of a religious organization, *and other property of the organization not used for business, rent, or profit.* (emphasis added)

Evangelical Covenant Church of America v. City of Nome[4] presented the only occasion upon which this court was called upon to interpret AS 29.10.336(c) before the 1964 amendments became effective. In that case we held that the residence of an associate or lay pastor was exempt from taxation as was the residence of the head pastor of the Covenant Church at Nome. In so doing, it was stated that the "other property of the organization not used for business, rent, or profit" portion of AS 29.10.336(c) represented a "broadened tax exemption." I believe two additional facets of the *Evangelical Covenant Church* decision are of significance here. First, it should be noted that the *Evangelical* opinion also characterizes the religious exemption provisions of article IX, section 4 of Alaska's Constitution as a "broadened

1. 32 Cal.2d 729, 221 P.2d 31, 35 (1950).

2. *See also* Serra Retreat v. Los Angeles County, 35 Cal.2d 755, 221 P.2d 59, 61 (1950).

3. Alaska Const. art. IX, § 4.

4. 394 P.2d 882, 885–886 (Alaska 1964).

tax exemption." [5] As previously noted, article IX, section 4 of Alaska's Constitution provides that "All, or any portion of, property used exclusively for non-profit religious, charitable * * * purposes, as defined by law, shall be exempt from taxation." Second, in regard to the rule that each church congregation has but one pastor, *Evangelical* [6] states:

> We doubt whether such a rule can be said to have any place in this day and age when many a church congregation is ministered to by more than one pastor.

In my opinion, the 1964 amendments to AS 29.10.336(c) broadened, rather than narrowed, exemptions extended to property used exclusively for religious purposes. In light of these statutory changes, and what I consider to be the rationale of the *Evangelical* decision, I would hold that the residences of ministers-administrators Hanson and Reed are exempt from taxation.

I view the present text AS 29.10.336(a) and (b) as establishing broader exemptive categories than did its predecessor for several reasons. First, the 1964 amendments expanded the term "residence" to include the residence of a "rabbi" or entire "religious order." Second, it appears that the 1964 amendments were designed to replace the former AS 29.10.336(c)'s "and other property of the organization not used for business, rent, or profit" with a comprehensive scheme of exemptions, which pertained not only to pastoral residences but also embraced any structure, together with the underlying land, furnishings, and fixtures, and adjacent lots, which were used for charitable or religious pur-

poses. I think it a permissible deduction, from a study of the provisions of AS 29.-10.336(b) (1), (2), (3), (4), (5), and (c), that the legislature intended to avoid the situation wherein a *ejusdem generis* construction would be applied to the former AS 29.10.336(c)'s "and other property" clause.[7] It seems to me to be quite arguable whether churches could have obtained tax exemptions under the old act for parochial schools, hospitals, residences of religious orders, furniture and fixtures used therein, lands lying adjacent to these structures which lands are reasonably necessary to the convenient use of such structures, and also for parking lots which were required by local ordinances.[8] The new provisions embodied in AS 29.10.336(b) (1), (2), (3), (4), and (5) strike me as creating rather expansive tax exemptions. In light of the fact that AS 29.10.336(b) (1) exempts the entire residence of a religious order, it would appear anomalous to construe the amended statute as limiting "the residence of the pastor" to a single pastor for each congregation.[9] I think such a result is precluded by a textual analysis of the new provisions embodied in AS 29.10.336 (b) and (c), and by the rationale of the *Evangelical* decision. In reaching this conclusion, I do not believe that "includes" as employed in AS 29.10.336(b) is intended as a word of limitation.[10] These considerations lead me to conclude that the residences of ministers-administrators Reed and Hanson are exempt, under AS 29.10.-336(a) and (b) (1), from taxation. In these times, it cannot be denied that ministers often are required to perform administrative duties. In addition to the foregoing, I cannot hold, on the facts appear-

---

5. *Id.* at 885.

6. *Id.* at 886 n. 15.

7. Not untypically, the legislature has failed to provide an adequate record of the legislative history of the questioned amendments.

8. AS 29.10.336(b) (1), (2), (3), (4), and (5).

9. Property falling within AS 29.10.336(a) and (b) only loses its exempt status if

nonclassroom rents or income are derived therefrom. This is the only criterion established for divestiture of exempt property of its tax free status. *See* AS 29.10.336(c).

10. I view the legislature's use of "includes" in AS 29.10.336(b) as reflecting an intent not to restrict the enumerated religious exemptions by the *inclusio unius est exclusio alterius* principle.

ing in this record, that the Hanson and Reed residences were not incidental to and reasonably necessary to carry out the purposes of their organization. This latter point requires reference to our decision in Matanuska-Susitna Borough v. King's Lake Camp [11] and its applicability to the question of the taxability of the Kuebler residence.

I consider the Kuebler teacher-administrator residence a closer case. In Matanuska-Susitna Borough v. King's Lake Camp [12] we adopted a broad definition of the term "charity." There we quoted Old Colony Trust Company v. Welch [13] where the court said:

> It is quite clear that what is done out of good will and a desire to add to the improvement of the moral, mental, and physical welfare of the public generally comes within this meaning of the word "charity."

Given the foregoing, it is my view that the Kuebler residence comes within AS 29.10.336(b) (2), which grants exempt status to "a structure, and the land it stands on, which is used for * * * solely charitable purposes * * *."

Further, in my opinion the use of this residence by an administrator-teacher was "incidental to and reasonably necessary for the accomplishment of its charitable purposes." [14] In Matanuska-Susitna Borough v. King's Lake Camp [15] this court held that a charity could use its properties in a manner which was incidental to and reasonably necessary for the accomplishment of its primary charitable purposes without losing its tax exemption. There we specifically held that receipt of certain incomes and rentals derived from the charity's properties did not divest the charity of its exempt status under AS 29.10.336(c) because such rents and income were only incidental to and reasonably necessary to the achievement of the primary charitable purposes. Here I believe that the Kuebler residence is within the ambit of AS 29.10.-336(c) (2)'s "solely charitable" purpose category. Once a structure qualifies for exemptive status, such status can only be lost under AS 29.10.336(c) if nonclassroom rentals or income are derived therefrom. Since neither rents nor income are derived from the Kuebler residence, I would hold it exempt.

11. 439 P.2d 441, 444 (Alaska 1968).

12. *Id.* at 445.

13. 25 F.Supp. 45, 48 (D.Mass.1938).

14. Matanuska-Susitna Borough v. King's Lake Camp, 439 P.2d 441, 444 (Alaska 1968).

15. *Id.*