**GREATER ANCHORAGE AREA BOR-
OUGH, Appellant,**

**v.**

**SISTERS OF CHARITY OF the HOUSE
OF PROVIDENCE, Appellee.**

**No. 2445.**

Supreme Court of Alaska.

Aug. 6, 1976.

Keith W. Bell, Asst. Municipal Atty., and Richard Garnett, Municipal Atty., Anchorage, for appellant.

Robert J. Dickson, Atkinson, Conway, Young, Bell & Gagnon, Anchorage, for appellee.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BURKE, Justice.

The central issue in this appeal is the tax-exempt status of a building owned by the Sisters of Charity of the House of

Providence,[1] under the provisions of Art. IX, Sec. 4, of the Constitution of Alaska [2] and AS 29.53.020.[3]

The Sisters of Charity, a long time health care provider in Alaska, erected the building in question, the Providence Professional Building, adjacent to their hospital on land deeded to them in 1959 by the United States for "hospital site, school and recreational purposes only".[4] The construction of the Professional Building began in 1970; its first full year of operation was 1972.

The Professional Building has four floors, including a basement, and is connected by an underground tunnel to nearby Providence Hospital. Three floors are the subject of this appeal, since the parties agree that the basement and tunnel are used exclusively for hospital purposes and are, therefore, exempt from taxation.[5]

The first, second and third floors are rented to doctors having hospital staff privileges at Providence Hospital, for use as their private office space. Approximately thirty-five doctors rent such space. These doctors, although enjoying staff privileges, are not employed by Providence Hospital, and their patients are not necessarily patients of the hospital. Thus, the actual use made of the first, second and third floors is for office space by doctors engaged in the private practice of medicine.

The doctor-tenants rent space on a square foot basis. Upon leasing, each tenant represents that he enjoys staff privileges, and the Sisters may cancel the lease as to any tenant who ceases to enjoy such privileges.[6] At the time of the hearings below, space was leased for $1.10 per square foot per month, a commercially competitive rate for the Anchorage area. The lease agreement provides that the Sisters shall pay any real property taxes which become payable on the Professional Building and associated lands provided, however, that the rents shall be adjusted annually for any increase in taxes. The agreement also provides that rentals shall be subject to a rental adjustment every two years for whatever reason the Sisters determine necessary. Nothing in the lease agreement restricts the doctor-tenants in the control of their office space.

1. The Sisters of Charity of the House of Providence is a nonprofit charitable and religious corporation organized under the laws of the State of Washington. Since incorporation the corporation has engaged primarily in operation of nonprofit hospitals.

2. Art. IX, Sec. 4, provides in part:
   *Exemptions:* . . . All, or any portion of, property used exclusively for nonprofit religious, charitable, cemetery or educational purposes, as defined by law, shall be exempt from taxation. Other exemptions of like or different kind may be granted by general law.

3. AS 29.53.020 provides in part:
   *Required exemptions.* (a) The following property is exempt from general taxation:
   . . . . .
   (3) property used exclusively for nonprofit religious, charitable, cemetery, hospital or educational purposes;
   . . . . .
   (c) Property described in (a) or (b) of this section from which income is derived is exempt only if that income is solely from use of the property by nonprofit religious,

charitable, hospital or educational groups for classroom space.

4. The 1959 transfer involved a 45 acre parcel of land located east of Lake Otis Boulevard, near Anchorage, Alaska. Following acquisition, the Sisters constructed and thereafter operated Providence Hospital upon the land. Both the hospital building and the surrounding patented land have been treated in the past as exempt from *ad valorem* property taxes. The Professional Building is located approximately 300 feet from the Providence Hospital building on a 4.73 acre parcel of the patented land.

5. "Hospital Area C", a Radiology, Laboratory and Surgical Center staffed largely by regular hospital employees, a lounge area, and public restroom facilities are located in the basement.

6. "Staff privileges" are not defined, but it is clear that the doctors are not hospital employees. The record also indicates that there is no requirement that a doctor exercise those privileges in order to remain a tenant of the Professional Building.

In 1973, the tax assessor for the Greater Anchorage Area Borough [7] assessed the Providence Professional Building at a value of $2,134,200.00. The tax on this assessment was $43,416.02, which the Sisters of Charity paid under protest.

The assessor determined that the first, second and third floors, and a proportionate share of the land upon which the building is situated, did not qualify for exemption from *ad valorem* taxation, as property being "used exclusively for nonprofit hospital . . . purposes," under AS 29.53.-020(a)(3). The Sisters appealed the assessment to the Greater Anchorage Area Borough Assembly, sitting as a board of equalization. The argument on appeal was that the entire property was sufficiently related to hospital purposes to allow total exemption. Upon hearing the evidence and arguments of the parties, the board denied the appeal. The Sisters then appealed to the superior court.

Again, the only issue on appeal was whether the property being assessed was entitled to exemption. No questions were raised regarding the sufficiency of the assessor's appraisal and proration methods or the assessed value of the property.

The superior court initially remanded the matter to the board for a finding of the percentage of the disputed office space which was "reasonably necessary for the fulfillment of the generally recognized functions of a completely modern hospital." [8] When the board did not submit such a finding within the period specified, the court ruled that all of the office space was exempt; upon further consideration of the board's later finding that no part of the board's later finding that no part of the

office space was necessary, the court reaffirmed its own ruling. This appeal by the borough followed.

A taxpayer claiming a tax exemption has the burden of showing that the property is eligible for the exemption. Furthermore, the courts must marrowly construe statutes granting such exemptions.[9] The policy behind these rules was expressed in *Animal Rescue League of Boston v. Assessors of Bourne*, 310 Mass. 330, 37 N.E.2d 1019, 1021 (1914):

> All property is benefited by the security and protection furnished by the State, and it is only just and equitable that expenses incurred in the operation and maintenance of government should be fairly apportioned upon the property of all. An exemption from taxation releases property from this obligation to bear its share of the cost of government and serves to disturb to some extent, that equality in the distribution of this common burden upon all property which is the object and aim of every just system of taxation. While reasonable exemptions based upon various grounds of public policy are permissible, yet taxation is the general rule. . . . It is for this reason that statutes granting exemptions from taxation are strictly construed. A taxyayer is not entitled to an exemption unless he shows that he comes within either the express words or the necessary implication of some statute conferring this privilege upon him.

In this case, therefore, the burden is on the Sisters to show that the office space is exempt. Under AS 29.53.020, this is a two-step process. They must first show, under Sec. 020(a)(3), that the property is

---

7. Subsequent to the commencement of this litigation, the Greater Anchorage Area Borough and the City of Anchorage merged to form the present Municipality of Anchorage. For the sake of convenience we will continue to refer to appellant as the Greater Anchorage Area Borough.

8. *Cedars of Lebanon Hospital v. Los Angeles County*, 35 Cal.2d 729, 221 P.2d 31 (1950).

9. *McKee v. Evans*, 490 P.2d 1226, 1230 (Alaska 1971); *Harmon v. North Pac. Union Conference Ass'n of Seventh Day Adventists*, 462 P.2d 432, 436 (Alaska 1969), quoting *Cedars of Lebanon Hospital v. Los Angeles County*, 35 Cal.2d 729, 221 P.2d 31 (1950).

"used exclusively for nonprofit . . . hospital . . . purposes." Then, since income is derived from the property, they must show that it meets the requirements that Sec. 020(c) [10] imposes on property exempt under Sec. 020(a)(3). It is the Sisters' argument that the office space must be considered "reasonably necessary for the fulfillment of the generally recognized functions of a completely modern hospital" and that it therefore can be characterized as used exclusively for hospital purposes. This formulation of the "exclusive use" test derives from *Cedars of Lebanon Hospital v. Los Angeles County*, 35 Cal.2d 729, 221 P.2d 31 (1950). We declined to adopt that part of the *Cedars of Lebanon* opinion in *Harmon v. North Pac. Union Conference Ass'n of Seventh Day Adventists*, 462 P.2d 432, 437–438 (Alaska 1969) because of factual differences; we reject it here for the same reason. The California court granted an exemption upon the finding that provision of living quarters for resident doctors and hospital employees was institutionally necessary. Those living quarters were not used for the private practice of medicine; the office space in the Providence Professional Building is. While it is clear from the record before us that the use of the office space by the doctor-tenants in conducting their private practices does provide incidental benefits to the hospital, it is equally clear, and we find as a matter of law, that the office space is not used exclusively for hospital purposes.

■ The Sisters urge that the owner's use, rather than the actual use, should be considered in making this determination. That analysis, however, would extend the tax exemption to everything owned and used in some way by an exempt institution. If only the uses of the office space by the Sisters are considered, by definition the Sisters' use is exclusive. Nothing in the exemption statute indicates that such a limited reading is justified.[11]

To support their contention that the owner's use alone should be considered in determining exclusive use, the Sisters cite *Matanuska-Susitna Borough v. King's Lake Camp*, 439 P.2d 441 (Alaska 1968), where the borough sought to tax a nonprofit camp which collected a small user fee from the groups which brought campers there. However, exclusive use was not an issue in that appeal, which concerned the effect of the income from user fees on the exemption, and the establishment of recreation as a charitable use. Thus, *King's Lake* can lend no support to the Sister's position. Similarly, in *Harmon v. North Pac. Union Conference Ass'n of Seventh Day Adventists, supra*, also cited by the Sisters to support their theory of use, this court did not have reason to consider the issue, since the question on appeal involved a specific statutory exemption for the residences of clergy, and not a question of use. We find nothing in these cases inconsistent with analyzing actual use rather than owner's use in determining eligibility for an exemption.

■ A better analogy than *King's Lake* or *Harmon* would be to compare the issue in this case with that decided in *Evangeli-*

10. AS 29.53.020(c) provides:
Property described in (a) or (b) of this section from which income is derived is exempt only if that income is solely from use of the property by nonprofit religious, charitable, hospital, or educational groups for classroom space.

11. The minutes of the Constitutional Convention indicate that the intent behind the exemption in Article IX, Sec. 4 of the Alaska Constitution was to the contrary.
. . . [T]he intent of the Committee here is to allow for tax exemptions on property used for religious, charitable, cemetery, or educational purposes, to be exempt from taxation, but to provide for taxation of income-producing property, and furthermore, to allow for proration of such income-producing property. For example, if a religious organization should own an office building, a part of which is rented out, a part of which is used for its own purposes, the intent here is to allow the taxation of the income-producing part of that office building and exemption of the non-income producing part. [Constitutional Convention Minutes 1112].

cal *Covenant Church of America v. City of Nome,* 394 P.2d 882 (Alaska 1964). The Church, an exempt institution like the Sisters, ran a radio station, which was used to broadcast religious material. Some of the air time was sold for commercial use, the proceeds going to support the church's work. This court held that the radio station was not used exclusively for religious purposes. While the exempt and the commercial uses of the Professional Building are not as clearly separable as were the uses in *Evangelical,* the lesson of that case is applicable here: when the property in question is used even in part by non-exempt parties for their private business purposes, there can be no exemption.[12]

■ Following *Cedars of Lebanon Hospital v. Los Angeles County, supra,* and its companion cases,[13] courts in many jurisdictions held exempt such hospital facilities as nurses' and residents' housing, recreational facilities for hospital staff, and parking lots.[14] None of these cases considered office space rented to doctors; where commercial activity of any sort, such as a thrift shop operated by a charity, was considered, the exemption was withdrawn.[15] Of the cases on point, the Sisters, and the superior court, rely on *Philips v. Southern Baptist Hospital,* 224 So.2d 684 (Fla.1969), to support the exemption. In that case, the Florida Supreme Court in a brief per curiam opinion, without analysis, held that office space

rented to doctors by the hospital was exempt. We find several decisions of other jurisdictions, which more fully treat the issues and policy consideration involved, to be more persuasive.

In *Gifford Memorial Hospital v. Town of Randolph,* 119 Vt. 66, 118 A.2d 480 (1955), the Vermont Supreme Court held not exempt a doctors' office building which brought together, in proximity to the hospital, doctors who had been scattered at distant locations; which allowed the hospital to have full-time emergency coverage; and which improved nurse training and use of laboratory and testing facilities. In applying the Vermont exemption statute, which requires only "primary use" for a charitable purpose, the court looked to the doctors' use of the building in the practice of their profession as the primary use, and held that the benefits to the hospital were insufficient to shift the use to one for the benefit of the hospital.

In *Milton Hospital and Convalescent Home v. Board of Assessors,* 360 Mass. 63, 271 N.E.2d 745 (1971), the hospital claimed an exemption for a professional building in circumstances virtually identical to those here. The Supreme Judicial Court denied the exemption, under a statute not requiring exclusive use,

because the premises leased by [the doctor-tenants] are not being used by them for the purposes for which the hospital is organized. The physicians occupy

---

12. This case does not raise the question of whether a hospital is entitled to an exemption for office space it *must* provide in order to secure doctor's services necessary to the functioning of the hospital. *See Baker v. Michigan State Tax Commission,* 43 Mich.App. 513, 204 N.W.2d 538 (1972).

13. *Young Men's Christian Ass'n. v. Los Angeles County,* 35 Cal.2d 760, 221 P.2d 47 (1950); *Serra Retreat v. Los Angeles County,* 35 Cal.2d 755, 221 P.2d 59 (1950); *Fredericka Home for the Aged v. San Diego County,* 35 Cal.2d 789, 221 P.2d 68 (1950).

14. *Maine Medical Center v. Lucci,* 317 A.2d 1 (Me.1974); *Hartford Hospital v. City and Town of Hartford,* 160 Conn. 370, 279 A.2d

561 (1971); *Bowers v. Akron City Hospital,* 160 Ohio St.2d 94, 243 N.E.2d 95 (1968); *Ellis Hospital v. Fredette,* 27 A.D.2d 390, 279 N.Y.S.2d 925 (1967); *Columbia Hospital Ass'n v. City of Milwaukee,* 35 Wis.2d 660, 151 N.W.2d 750 (1967); *Oakwood Hospital Corp. v. Michigan State Tax Com'n.,* 374 Mich. 524, 132 N.W.2d 634 (1965); *Maxwell v. Good Samaritan Hospital Ass'n.,* 161 So. 2d 31 (Fla.App.1964); *Cedars of Lebanon Hospital v. Los Angeles County,* 35 Cal.2d 729, 221 P.2d 31 (1950).

15. *Cedars of Lebanon Hospital v. Los Angeles County,* 35 Cal.2d 729, 221 P.2d 31, 41 (1950); *Young Men's Christian Ass'n. v. Los Angeles County,* 35 Cal.2d 760, 221 P. 2d 47, 55–57 (1950).

their offices to conduct their private professional practices for their own personal income. The hospital is not incorporated for the purpose of engaging in the practice of medicine for profit, . . . [16]

Nor is office space a hospital leases to doctors exempt in New York, under *Genesee Hospital v. Wagner*, 47 A.D.2d 37, 364 N.Y.S.2d 934 (1975). The doctors' office building at issue there provided all the benefits the Professional Building does, and in addition served to improve the educational function of the hospital. The New York exemption statute requires exclusive use, like the Alaska statute; the court held that the use by the doctors was not exclusively for hospital purposes.

> While it is argued that the hospital and the physicians serve the same purpose in the community, that is, to improve the health care of its citizens, . . . for purposes of a tax exemption statute this is too broad a definition in that it fails to take into account the commercial and private practice nature of the physician's operations in the subject office building. The private practice of medicine by a hospital's attending physicians is primarily a commercial enterprise only incidentally related to the hospital's function of providing health care to the community.[17]

The record indicates that the Sisters have performed a service to doctors and patients alike in constructing the Professional Building, and that health care at Providence has been benefited. In order to qualify for an exemption, however, the taxpayer must show, not benefits, but exclusive use. The use of the Professional Building for nonprofit hospital purposes is not exclusive. Therefore, we reverse and remand to the superior court for the entry of an order affirming the Board of Equalization's decision denying the Sisters' appeal.

REVERSED and REMANDED.

16. *Milton Hospital and Convalescent Home v. Board of Assessors*, 360 Mass. 63, 271 N.E. 2d 745, 749 (1971) (footnote omitted).